RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

UNITED STATES OF AMERICA,

　　　　　　　　　　*Plaintiff-Appellee*,

　　*v.*

DANIEL B. FLEISCHER,

　　　　　　　　　　*Defendant-Appellant*.

> No. 19-3719

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:18-cr-00209-1—Christopher A. Boyko, District Judge.

Decided and Filed: August 20, 2020

Before: BATCHELDER, BUSH, and LARSEN, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:** Lawrence J. Whitney, BURDON & MERLITTI, Akron, Ohio, for Appellant. Carol M. Skutnik, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

**OPINION**

───────────────

JOHN K. BUSH, Circuit Judge. On April 8, 2019, Daniel B. Fleischer pleaded guilty to one count of sexual exploitation of a minor (Minor Victim #1), in violation of 18 U.S.C. § 2551(a); and one count of receipt and distribution of visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2552(a)(2). Fleischer's plea agreement with the Government was made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A). The parties agreed to dismiss Count Four of the superseding indictment, charging Fleischer with

exploitation of a minor victim (Minor Victim #2), in violation of 18 U.S.C. § 2551(a). However, his plea agreement did include a section labeled, "RELEVANT CONDUCT," which contained Fleischer's admission to the offense conduct involving Minor Victim #2. Following Fleischer's plea, the district court sentenced Fleischer to a within-Guidelines sentence of 447 months.

Fleischer now appeals the procedural and substantive reasonableness of his sentence. Specifically, Fleischer argues the district court committed error in (1) applying to his sentence both a multiple count adjustment under U.S.S.G. § 2G2.1(d)(1), based on his conduct in relation to Minor Victim #2, and a pattern of activity enhancement under U.S.S.G. § 2G2.2(B)(5); and (2) placing an unreasonable amount of weight on the "seriousness" of his conduct as a sentencing factor under 18 U.S.C. § 3553(a). We find Fleischer's arguments unpersuasive. Because we determine that the district court did not commit error when handing down Fleischer's sentence, which was both within the Guidelines and based on the factors set forth by 18 U.S.C. § 3553(a), we **AFFIRM** the 447-month sentence imposed by the court.

**I.**

**A.      Fleischer's Viewing and Distributing Child Pornography on Kik Messenger**

In December 2017, the police department of Lockport, New York, first contacted the Federal Bureau of Investigation Child Exploitation Task Force regarding an individual, who turned out to be Fleischer, and who had used the Kik Messenger App ("Kik")[1] to receive, trade, and distribute child pornography. (R. 28: Sealed Presentence Investigation Report ("PSR"), PageID 103; R. 32 Sealed U.S. Sent. Mem., PageID 144). This information was provided by an informant who allowed law enforcement to search his phone and assume his online identity. Using this online alias, investigators were able to enter the subject's various Kik "groups," through which they eventually discovered that one of the groups disseminated child pornography images, pictures, and videos. One group user, with the username "aust0220df" and display name

---

[1]Kik is a mobile device application through which users can participate in one-to-one and group chatting, including anonymous chat, as well as send messages, videos, images, and "gifs." Unlike the other popular messaging apps, Kik has several distinguishing features, including an internal browser that enables content searches within the app. *Explainer: What is Kik?*, webwise.ie (2019), https://www.webwise.ie/parents/explainer-what-is-kik/.

"DF," was particularly active, distributing numerous lascivious videos of female minors.  (R. 28: Sealed PSR, PageID 103).  This user was eventually confirmed to be Fleischer.

Based on this evidence, the FBI obtained and executed a search warrant for Fleischer's home on March 28, 2018.  The search found numerous devices inside the residence, which included several of Fleischer's cellphones.  As to one phone, a Samsung Galaxy S8, he admitted to downloading the Kik app and using the username "aust0220df." (*Id*.).  Fleischer also admitted that while on Kik, he had viewed hundreds of child pornography images and videos from "megalinks," the content of which contained mostly prepubescent girls under the age of 16.  As to the latter admission, Fleischer informed agents that he always deleted the explicit content after viewing it on his phone.

**B.      Homemade Images of Child Pornography on Fleischer's Thumb Drives**

Following the search of his residence, Fleischer agreed to participate in a polygraph examination with FBI Special Agent Lance Fragomeli.  This examination, however, did not take place because of a discovery made during Fleischer's pre-examination interview.  As part of the questioning, a forensic specialist showed Fleisher five images from two thumb drives that investigators had seized from the search.  The images, created in 2011, appeared "homemade," showing a young girl in only her underwear or nude.  (R. 32: Sealed U.S. Sent. Mem., PageID 149).  One image depicted an article of underwear being pulled down by a white male's left hand.  On one of his fingers was a gold, striated ring that appeared to match one of the rings worn by Fleischer in the interview.  Fragomeli asked Fleischer, and he agreed, to show the agent his rings.  Further investigation confirmed that one of them matched the ring in the homemade image.

Upon being confronted with these findings, Fleischer confessed that he had taken several photos of a neighborhood girl, who frequented his home in 2011; however, he claimed he could not recall the girl's name.  The agents then presented Fleischer with a list of names of girls obtained from his wife, and asked him if he recognized any of the names as belonging to the girl from the homemade images.  Fleischer identified the girl as "Alissa"—an identification that was

later revealed to be false.  (*Id*., PageID 150).  The polygraph interview was terminated without a polygraph examination.

### C.      Additional Admissions from Fleischer

After the first interview, Fleischer confessed to agents that he had begun viewing child pornography between 2001 and 2003, and viewed the content "every other day or so."  (*Id*.; R. 28: Sealed PSR, PageID 103).  He also admitted that he had used Kik for approximately ten years, and during the last couple years, had shared images and/or videos of child pornography in various Kik groups dedicated to child pornography.

Agents then questioned Fleischer about the photos he took of "Alissa" in 2011.  Fleischer claimed that he had taken "two for sure" that exposed her genital area; he also believed that he had used his Samsung Galaxy Nexus cellphone to take the photos, which he then transferred to his external drive.  (R. 32: Sealed U.S. Sent. Mem., PageID 148).  In addition, Fleischer described "Alissa" at the time of the photos as around his stepdaughter's age, meaning she was between ten and twelve years old.  However, Fleischer denied ever touching "Alissa" or taking any additional photos of her.  (*Id*.).

Last, when asked by agents whether he photographed the other victim named in the indictment, "Minor Victim #1", Fleischer replied: "not that I can remember" and "not that I know of."  He further denied having ever touched Minor Victim #1.  (*Id*.).

### D.      Revelations of the Police Investigation Related to Minor Victim #1

It turned out that the homemade child pornography images on Fleischer's devices were of him touching Minor Victim #1, not a girl named "Alissa."  Minor Victim #1 identified herself in the images where Fleischer was pulling down her underwear.  She informed law enforcement that she had been coerced into performing manual stimulation, as well as oral sex, on Fleischer.  She explained that the abuse had occurred on numerous occasions, when she was between the ages of nine and eleven years old and living in Austintown, Ohio.  Minor Victim #1 also revealed that Fleischer had paid her in cash after some of the incidents and threatened to take

away her cellphone if she refused to participate. He had also showed her adult pornography so she would understand the positions in which he asked her to pose.

### E.     Additional Evidence Collected on Fleischer's Devices

Ultimately, the forensic analysis of Fleischer's iPhone discovered over 700 images and 15 videos of child pornography. The iPhone also revealed evidence that Fleischer communicated with young girls on social media with the intent to sexually exploit them. The evidence included a section in his "Notes" folder on his phone in which he stored several prefabricated chat messages to send to potential victims.[2]

Investigators also found a number of sexually explicit chats on Fleischer's phone with users who identified themselves as underage girls. One particular chat between Fleischer and a girl, "Instagram User 1,"[3] who identified herself as fourteen years old, involved Fleischer sending photos of his penis to her. (R. 28: Sealed PSR, PageID 104; R. 32; U.S. Sent. Mem., PageID 150-51). Another chat, this time between Fleischer and a girl, "Instagram User 2," who identified herself as seventeen years old, also involved Fleischer sending photos of his genitals and informing her that he likes "young." (R. 32: U.S. Sent. Mem., PageID 151). In a third chat with "Instagram User 3," Fleischer made a number of revelations, including that he liked young girls and had a large collection of videos and pictures. He also sent the following comment to "Instagram User 4": "Love her boobs I can't touch her but love smelling her used underwear (smiling emoji) if that's ok wife doesn't know it though." (R. 28: Sealed PSR, PageID 104; R. 32: U.S. Sent. Mem., PageID 151). And, in a fourth chat, Fleischer told "Instagram User 5" that he loved smelling "her" used underwear, and asked if he/she knew of any chat rooms that "young girls hang on." (R. 28: Sealed PSR, PageID 104; R. 32: U.S. Sent. Mem., PageID 151).

---

[2]For example, one particular message said, "Hello how are you doing love your Instagram pics do you want to chat on Snapchat or kik I may be older than you but your pictures are still cute my kik is fleishdog." R. 28: Sealed PSR, PageID 104.

[3]The names of the Instagram users with whom Fleischer communicated have been omitted for privacy reasons.

**F.      Further Information on Minor Victim #2**

Finally, forensic analysts located digital images of another female minor, Minor Victim #2, on Fleischer's iPhone.  These images included clothed photos of Minor Victim #2, as well as photos depicting her engaged in sexual intercourse with Fleischer.  Fleischer also had stored a photo of the driver's license of Minor Victim #2, which established that she was a minor.

During her interview with agents, Minor Victim #2 stated that she had met Fleischer in 2013, when she was sixteen years old.  She also reported that during her interactions with Fleischer, he had occasionally given her alcohol and photographed or recorded her as they engaged in sexual acts.  In addition, Minor Victim #2 revealed that she had sent Fleischer nude images of herself, and he had sent her images of his penis.  However, thinking that Fleischer had deleted the images she had sent him, Minor Victim #2 was very angry upon learning that Fleischer had shown the images to others.

**G.      Fleischer's Plea Agreement and the Presentence Report**

On April 26, 2018, a federal grand jury returned an indictment charging Fleischer with the following: one count of sexual exploitation of a minor involving Minor Victim #1, in violation of 18 U.S.C. § 2551(a); one count of receipt and distribution of visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2552(a)(2); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  On September 11, 2018, a federal grand jury returned a superseding indictment, adding a fourth count to the original indictment for the sexual exploitation of Minor Victim #2, in violation of 18 U.S.C. § 2551(a).

On April 8, 2019, Fleischer pleaded guilty to counts one and two of the superseding indictment, pursuant to a plea agreement with the Government under Federal Rule of Criminal Procedure 11(c)(1)(A).  As part of the package resolution in the plea agreement, the Government agreed to dismiss Count Three, charging Fleischer with possession of child pornography under 18 U.S.C. § 2552A(a)(5)(B), and Count Four, charging Fleischer with sexual exploitation of a child under of § 2551(a) in relation to Minor Victim #2.  Furthermore, under the plea agreement, the parties stipulated to an advisory Sentencing Guidelines computation that placed Fleischer at a

sentencing level of 42; however, this level was stipulated to before Fleischer's acceptance of responsibility. The plea agreement did not include a calculation to account for Fleischer's conduct with respect to Minor Victim # 2, nor did it include a calculation to reflect his pattern of activity. The plea agreement did include, however, the following separate section, which outlined the factual basis for the offense conduct from Count Four involving Minor Victim #2:

> RELEVANT CONDUCT: Also found on FLEISCHER'S iPhone were digital images taken by FLEISCHER between the months of August and December of 2013, of him engaged in sexual intercourse with Minor Victim #2, then 16 years-old.

(R. 25: Plea Agreement, PageID 73).

In addition, the parties agreed to recommend that the district court impose a sentence within the stipulated Guidelines range, which they subsequently requested at sentencing. However, whereas the Government argued for the maximum prison term in the stipulated Guidelines range, Fleischer argued for the low end of that range.

Ultimately, the presentence report ("PSR") differed from the plea agreement by including a Guidelines calculation for Minor Victim #2 (although Fleischer had not pleaded guilty to the count related to Minor Victim #2), thus resulting in an adjusted offense level of 34. Pursuant to U.S.S.G. § 3D1.4, this resulted in an addition of 0.5 units to the multiple-count adjustment. Also, in its calculation for Count Two, the PSR included a five-level enhancement for Fleischer's pattern of activity, pursuant to U.S.S.G. § 2G2.2(b)(5). The PSR further added three levels for the multiple-count adjustment to the greater of the adjustment offense levels (now Count Two), therefore resulting in an offense level of 45. However, here, a three-level reduction for Fleischer's acceptance of responsibility was triggered, thus bringing the total offense level down to 42. Collectively, these calculations meant that the PSR's final calculation was three levels higher than that recommended in the plea agreement.

Nonetheless, the parties acknowledged in the plea agreement "that other U.S.S.G. enhancements could apply to the Defendant's offense conduct, including: § 2G2.2(b)(5), Pattern of activity; § 3C1.1, Obstructing or impeding the administration of justice; and § 5K2.21, Dismissed and uncharged conduct." (R. 25: Plea Agreement, PageID 69). Importantly as well,

the agreement had informed Fleischer that the parties' recommendations were not binding on the district court, meaning "the Court alone will decide the advisory [G]uideline[s] range under the Sentencing Guidelines . . . and what sentence to impose." (*Id..* at PageID 68). Similarly, during the plea hearing, the district court advised Fleischer that the parties' sentencing recommendations were not binding on the court, meaning the court possessed final discretion to determine Fleischer's sentencing range, including discretion to go above or below that range.

## H.    The District Court's Final Sentence for Fleischer

Fleischer filed several objections to the PSR. First, he challenged the creation of a "pseudo count 1A" for Minor Victim #2, given that he had not pleaded guilty for the offense conduct involving Minor Victim #2 that was originally covered by Count Four in the superseding indictment.[4] In particular, he argued that the enhanced sentencing based on his conduct with relation to Minor Victim #2 represented "double counting" as to the counts to which he had pleaded guilty. Second, Fleischer challenged the district court's use of that "pseudo count" in adding another level to the multiple count adjustment, which, he argued, made it inconsistent with the plea agreement. Last, he challenged the court's application of the pattern-of-activity enhancement as representing double counting to the calculation for Minor Victim #1 in Count One.[5] Although the Government disagreed with Fleischer's arguments in its sentencing memorandum, it recommended a sentence that would be consistent with the parties' calculations in the plea agreement—a position it reiterated at sentencing.

On July 24, 2019, the district court adopted the PSR's Guideline calculations, thereby rejecting the parties' sentencing calculations in the plea agreement. Accordingly, the court sentenced Fleischer to an aggregate within-Guidelines sentence of 447 months. This sentence represented a 327-month sentence for Count One, which would run consecutively to a

---

[4]The term "pseudo count" has been applied by this court and others to the Special Instruction of U.S.S.G. Section 2G2.1(d)(1): "If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction.'"

[5]Fleischer also objected to the district court's application of a two-level enhancement for his having used a computer. However, Fleischer does not pursue the argument here, and it is therefore forfeited.

120-month sentence on Count Two.  Fleischer preserved his objections following the imposition of the sentence, and timely filed a notice of appeal.

## II.

In appealing the procedural and substantive reasonableness of his sentence, Fleischer advances several arguments.  First, he argues that the trial court erred "by increasing his sentence over and above the Plea Agreement by almost one-third because the [G]uidelines [already] account for serious factors [based on] the specific characteristic enhancements."  (Appellant Br. at 8).  Second, and relatedly, he argues that the trial court ordered a substantively unreasonable sentence "by placing too much emphasis on serious factors."  (*Id.*).  Third, Fleischer argues that the district court erred in enhancing his "[G]uidelines sentence via a course of conduct specific characteristics (U.S.S.G. § 2G2.2(b)(5)) and via multiple counts (U.S.S.G. § 3D1.4(a) and (b))."  (*Id.*).  The application of both enhancements, Fleischer contends, amounts to impermissible double counting because both enhancements reflect the "same aspect of his conduct."  (*Id.*)  We are unpersuaded by these arguments, which we address in turn below.

### A.　Standard of Review

To determine whether a defendant's sentence is reasonable, this court uses an abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."); *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008).

"Review for reasonableness has both procedural and substantive components."  *Jeross*, 521 F.3d at 569 (citing *United States v. Carter*, 510 F.3d 593, 600 (6th Cir.2007)).  We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Id.* (quoting *Gall*, 552 U.S. at 51).  "In reviewing the district court's calculation of the Guidelines, we . . . review the district court's factual findings for clear error

and its legal conclusions *de novo*." *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013) (alteration in original) (quoting *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir.2007)). "Under the clear-error standard, we abide by the court's findings of fact unless the record 'le[aves] [us] with the definite and firm conviction that a mistake has been committed.'" *Id.* (alterations in original) (quoting *United States v. Gardner*, 649 F.3d 437, 442 (6th Cir. 2011)).

"Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. "Substantive reasonableness focuses on whether a 'sentence is too long (if a defendant appeals) or too short (if the government appeals).'" *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir.), *cert. denied*, 140 S. Ct. 44, 205 L. Ed. 2d 150 (2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)). "Because the Sentencing Guidelines are now advisory, a district court is permitted to vary from those [G]uidelines in order to impose a sentence which fits the mandate of section 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006). Therefore, this court "afford[s] due deference" to the sentencing court's sentence if "it is justified in light of the relevant 3553(a) factors." *United States v. Herrera-Zuniga*, 571 F.3d 568, 591 (6th Cir. 1990). We apply a rebuttable presumption of substantive reasonableness to a within-Guidelines sentence. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

B.     **Procedural Reasonableness**

1.     **The District Court's Adoption of a Pseudo Count for Minor Victim #2**

The district court calculated Fleischer's final offense level to a total of 42. This calculation was permissible. As the parties acknowledge, Fleischer's conduct in relation to Minor Victim #2 could properly be used as a pseudo count despite the fact that Fleischer had not pleaded guilty to this count. The pseudo count, in turn, resulted in an additional level to Fleischer's sentence under the multiple count adjustment. The court also agreed with the PSR's recommended five-level pattern of activity enhancement under U.S.S.G. § 2G2.2(b)(5).

On appeal, Fleischer neither challenges the accuracy of the court's pseudo-count calculation for Minor Victim #2, nor challenges the legal validity of the court's application of the

pattern-of-activity enhancement under U.S.S.G. § 2G2.2(b)(5). Rather, Fleischer argues only that the district court should not have applied the additional calculations because those calculations were inconsistent with the parties' collective sentencing recommendations in the plea agreement made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A). However, Fleischer's argument is meritless.

In the plea agreement, the parties acknowledged that the parties' sentencing recommendations were not binding on the district court, and "the [district court] alone [would] decide the advisory [G]uideline range under the Sentencing Guidelines . . . and what sentence to impose." (R. 25: Plea Agreement, PageID 68). During the plea colloquy, Fleischer confirmed to the court his understanding that the parties' recommendations were not binding, and he even acknowledged that the court had discretion to decide whether to go above or below the sentencing range the parties recommended.

Furthermore, Fleischer fails to show that the district court committed any "significant procedural error" by adopting the PSR's Guidelines calculations as opposed to the recommendations of the parties. As the court explained, Fleischer's commission of Count One—the sexual exploitation of Minor Victim #1—resulted in an adjusted offense level of 40. The court then relied on calculations from the PSR related to Fleischer's remaining two counts and the multiple-count adjustment.

After explaining these calculations, the district court adopted the PSR's use of pseudo-count 1A to calculate the Guidelines range for the offense conduct originally covered by Count Four in the superseding indictment. The counting of pseudo-count 1A was not improper. While we recognize that the Government had agreed to dismiss Count Four as part of a package resolution in Fleischer's plea agreement, the factual basis for Fleischer's guilty plea did include an admission that his iPhone contained digital images that he took between August and December of 2012, which depicted Fleischer engaged in sexual intercourse with Minor Victim #2. At the time, Minor Victim #2 was sixteen years old.

"In cases involving the exploitation of multiple minors, the Guidelines instruct the district court to determine the defendant's offense level by applying Chapter Three, Part D (Multiple

Counts) 'as if the exploitation of each minor had been contained in a separate count of conviction.'" *United States v. Schock*, 862 F.3d 563, 567 (6th Cir. 2017) (quoting U.S.S.G. § 2G2.1(d)(1)). "This provision applies 'if the *relevant conduct* of an offense of conviction includes more than one minor being exploited' and regardless of whether the additional minors are cited in the count of conviction." *Id.* (quoting U.S.S.G. § 2G2.1(d)(1) cmt. n.7).

As we recognized in *Schock*, "[t]he Guidelines provide two definitions of 'relevant conduct.'" *Id.* First, under § 1B1.3(a)(1), relevant conduct is defined as "all acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* (alterations in original) (quoting U.S.S.G. § 1B1.3(a)(1)). Second, pursuant to § 1B1.3(a)(2), "for those offenses 'of a character for which § 3D1.2(d) would require grouping of multiple counts,' relevant conduct also extends to 'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Id.* (alteration in original) (quoting U.S.S.G. § 1B1.3(a)(2)).

Application note 7 to § 2G2.1 offers further clarification to the special instruction in subsection (d)(1), explaining: "For purposes of Chapter Three, Part D (Multiple Counts), each minor exploited is to be treated as a separate minor. Consequently, multiple counts involving the exploitation of different minors are not to be grouped together under Section 3D1.2 (Groups of Closely Related Counts)." The PSR's recommendations, which the district court adopted, adhered to the above directives. Namely, because Fleischer sexually exploited two separate minor victims, the PSR outlined two separate calculations, thus resulting in a multiple-count adjustment on Fischer's base offense level.

On appeal, Fleischer does not advance the argument that his offense conduct involving Minor Victim #2 cannot constitute "relevant conduct" for his count of conviction for Minor Victim #1, as defined in U.S.S.G. § 1B1.3(a)(1). "It is well settled that an argument not raised on direct appeal is [forfeited]." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). Moreover, in his objections to the PSR during sentencing, Fleischer failed to advance a relevant-conduct argument when objecting to the multiple count adjustment for Minor Victim #2. In fact, Fleischer's counsel conceded that the allegations regarding Minor Victim #2, as laid

out in the PSR, appeared to be relevant conduct, and therefore, the court's application of three additional levels for the multiple- count adjustment would be correct. Fleischer's counsel also conceded that when Fleischer admitted to the factual basis in the plea agreement, he had been on notice of the offense conduct involving Minor Victim #2. Such concessions constitute waiver of these arguments on appeal. *United States v. McBride*, 826 F.3d 293, 294–95 (6th Cir. 2016) Because "waiver is the 'intentional relinquishment or abandonment of a known right,'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)), there is no error for us to review, *id.* 732–33 ("Deviation from a legal rule is 'error' unless the rule has been waived.").

**2.      The District Court's Application of the Pattern-of-Activity Enhancement in U.S.S.G. § 2G2.2(b)(5)**

Fleischer also challenges the district court's application of the pattern-of-activity enhancement under U.S.S.G. § 2G2.2(B)(5) when determining his Guidelines calculation for Count Two, his conviction for the receipt and distribution of visual depictions of real minors engaged in sexually explicit conduct.

Section § 2G2.2(b)(5) instructs courts to apply a five-level enhancement to a defendant's sentence "if the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The provision's Commentary defines "pattern of activity" as "any combination of two or more separate instances of the *sexual abuse or sexual exploitation* of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2, applic. n.1 (emphasis added). "Sexual abuse or exploitation," in turn, encompasses several enumerated federal offenses, including 18 U.S.C. § 2241, Aggravated Sexual Abuse with Children, 18 U.S.C. § 2243, Sexual Abuse of a Minor or Ward, and 18 U.S.C. § 22519a, Sexual Exploitation of a Minor, as well as an offense under state law that would have violated one of the enumerated federal offenses. *Id.*

Here, the explicit acts performed by Fleischer, as reported by Minor Victim #1 and Minor Victim #2, leave no question that the district court properly applied the pattern-of-activity enhancement under U.S.S.G. § 2G2.2(b)(5). Minor Victim #1 reported to law enforcement that

she was forced to perform sexual acts on Fleischer on five to ten separate occasions when she was between the ages of nine and eleven years old (2011 and 2013). She also reported that Fleischer took nude pictures of her. Furthermore, Minor Victim #2 informed law enforcement that she sent sexually explicit images to Fleischer from her cellphone, and that Fleischer recorded the two of them with his iPhone during sexual intercourse. These are credible allegations of "sexual abuse or sexual exploitation" advanced by Minor Victims #1 and #2, which represent violations of Sections 2241, 2243 and 2251(a). Finally, because the acts are reported to have occurred over a series of multiple dates, Fleischer did engage in the requisite "pattern of activity" in his "sexual abuse or exploitation of a minor." *See* U.S.S.G. § 2G2.2(b)(5). Therefore, the district court properly applied the pattern-of-activity enhancement.

### 3. The District Court's Use of a Pseudo-Count Guidelines Calculation Pursuant to U.S.S.G. § 2G2.1(d)(1) and Its Application of the U.S.S.G. § 2G2.2(b)(5) Enhancement for Pattern of Activity

Finally, Fleischer argues that the district court's application of an increased multiple-count adjustment, which includes Minor Victim #2, in combination with the pattern-of-activity enhancement, resulted in impermissible double counting. As with our evaluation of Fleischer's other arguments, we find this argument to be similarly misplaced.

"In reviewing the district court's calculation of the Guidelines, we . . . review the district court's factual findings for clear error and its legal conclusions *de novo.*" *Bolds*, 511 F.3d at 579. Furthermore, our "standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous." *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017).

Impermissible double counting will "render[] a sentence procedurally unreasonable." *United States v. Battaglia*, 624 F. 3d 348, 351 (6th Cir. 2010) (quoting *United States v. Flack*, 392 F. App'x 467, 470 (6th Cir. 2010)). It "occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways." *United States v. Moon*, 513 F.3d 527, 542 (6th Cir. 2008) (internal quotation marks omitted). However, double counting does not occur "where a defendant is penalized for 'distinct aspects of the defendant's conduct.'" *Id.* (quoting *United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir.2007)).

Also, "not all instances of double counting are impermissible." *United States v. Farrow*, 198 F.3d 179, 194 (6th Cir. 1999). For example, "we recognize that the Sentencing Guidelines expressly mandate double counting under some circumstances through the cumulative application of sentencing adjustments." *Id.* In addition, double counting is permissible "where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Id.*; c*f. United States v. Johnson*, 22 F.3d 106, 108 (6th Cir.1994) (finding that Congress intended to impose multiple punishments for the same conduct under 18 U.S.C. § 2119, which outlaws carjacking, and 18 U.S.C. § 924(c), which prohibits the use of a firearm in a crime of violence). "These 'exceptions' to our rule against double counting, if they can be characterized as such, derive from the principle that the Sentencing Guidelines 'should be interpreted as if they were a statute,' which in turn dictates that we 'follow the[ir] clear, unambiguous language if there is no manifestation of a contrary intent.'" *Farrow*, 198 F.3d at 194 (quoting *United States v. Hayter Oil Co.*, 51 F.3d 1265, 1272 (6th Cir.1995) (alteration in original)).

Here, our analysis of whether impermissible double counting occurred begins with the two provisions of the Guidelines applied by the district court in determining Fleischer's final sentence: the pattern-of-activity enhancement found in U.S.S.G. § 2G2.2 and the relevant-conduct provision triggered by § 2G2.1(d)(1), pursuant to § 1B1.3(a)(1).

First, as explained *supra*, under U.S.S.G. § 2G2.2, the pattern-of-activity enhancement applies to child pornography offenses outlined in Title 18, Sections 1466A, 2251(d)(1)(A), 2252, 2252A(a) & (b), and 2260(b) of the United States Code. This enhancement relates to a specific offense characteristic and will escalate an offender's base offense level when there is evidence that the offender engaged in one or more acts of "sexual abuse or exploitation of a minor," or minors, and over a series of different dates. "The sentencing enhancement for a pattern of sexual abuse or exploitation does not 'require [] a temporal nexus between any instances of sexual abuse or exploitation.'" *United States v. Wright*, 464 F. App'x 475, 483 (6th Cir. 2012) (alteration in original) (quoting *United States v. Gawthrop*, 310 F.3d 405, 414 (6th Cir.2002)).

We next turn to § 2G2.1(d)(1), which states, "If the offense involved the exploitation of more than one minor, [Multiple Counts] shall be applied as if the exploitation of each minor had

been contained in a separate count of conviction." This provision differs only from U.S.S.G. § 2G2.2 in that its application is triggered when a defendant's conduct in relation to multiple victims falls under the umbrella of "relevant conduct" to his other indicted charges. This allows district courts to consider separate Guideline calculations that reflect the individual harm caused to each of the victims related to the indictment, regardless of whether those victims were ultimately named in the count to which the defendant pled guilty pursuant to a plea agreement.

Given the number and breadth of the various Guideline provisions, it is inevitable that, on occasion, they will overlap in their scope. And, in fact, the authors of the Guidelines provided a framework for resolving such overlap in Application Note 4(B) ("Cumulative Application of Multiple Adjustments from Multiple Guidelines") of U.S.S.G. § 1B1.1 (Application Instructions), which provides: "Absent an instruction to the contrary, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively. In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct."

Notwithstanding the inevitability of a Guidelines-overlap situation, we apparently are the first court of appeals to consider a double-counting challenge based upon the district court's application of § 2G2.1(d)(1) and § 2G2.2(b)(5). However, our sister circuits provide helpful assistance in assessing this question. For example, the Eighth Circuit has upheld the simultaneous application of § 2G2.1(d)(1) and U.S.S.G. § 4B1.5(b)(1)—a Chapter Four enhancement that applies in a covered sex crime for a pattern of activity involving prohibited sexual conduct. The court emphasized that no impermissible double counting could have occurred because the sentencing enhancements were not premised on the "same kind of harm." *United States v. Peck*, 496 F.3d 885, 891 (8th Cir. 2007). Namely, "[t]he application of § 2G2.1(d)(1) punished [defendant] for exploiting three different minors, while the § 4B1.5(b)(1) enhancement punished him for exploiting those minors on multiple occasions." *Id.* ("[T]he separate enhancements for the number of minors [that defendant] exploited and for the fact that [defendant] exploited the minors on multiple occasion are not premised on the same harm."). To underscore its reasoning, the Eighth Circuit cited *United States v. Schmeilski*, 408 F.3d 917, 920 (7th Cir. 2005) (holding that the application of both § 2G2.1(d)(1) and

§ 4B1.5(b)(1) does not constitute impermissible double counting) for the proposition that "for a defendant who had on only one occasion photographed three minor children engaging in sexually explicit conduct, § 2G2.1(d)(1) would apply because more than one minor was exploited[,] but § 4B1.5(b)(1) would not because prohibited sexual conduct did not occur on at least two separate occasions." *Peck*, 496 F.3d at 891.

Here, the Guidelines separately punish defendants who sexually exploit multiple victims, and child pornography offenders who have a history of more than one instance of sexually abusing or exploiting a child. These enhancements are therefore not premised on the "same type of harm." *Id.* We find this analogous to the situation in *Peck* and determine the district court's application of both Guidelines enhancements was appropriate and did not constitute impermissible double counting.

Therefore, Fleischer fails to show that his sentence is procedurally unreasonable.

**C.       Substantive Reasonableness**

Although Fleischer concedes that the district court properly considered the § 3553(a) factors as an adequate basis for his 447-month sentence, he still claims the sentence is substantively unreasonable because it exceeds the range contemplated by the parties in their plea agreement. Relatedly, he claims that the court placed unreasonable weight on the "seriousness" of his offenses under § 3553(a). (Appellant's Br. at 14).

When evaluating the substantive reasonableness of a sentence, we consider "the district court's rationale for concluding that the sentence imposed is sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *Bolds*, 511 F.3d at 580 (quoting *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir.1999)).

Our review of the sentencing transcript here confirms two pertinent conclusions: (1) the district court gave a thorough and methodical rationale for its review and considered the various sentencing factors; and (2) the court advanced a thoughtful explanation for why the parties' non-binding sentencing recommendations, as set forth in the plea agreement, were insufficient in this case.

As the transcript shows, the court thoroughly considered the § 3553(a) factors, which included the nature and circumstances of Fleischer's offenses, and his history and characteristics. Importantly as well, the court addressed the issue of sentencing disparities, and it inquired about restitution to the victims.

In its general discussion of retribution and the need for a sentence that would improve offender conduct, the court emphasized to Fleischer that it was up to him decide how, and to what extent, he planned to improve himself in the future. The court then turned to the seriousness of the offenses, noting that Counts 1 and 2 involved different victims and different conduct: while Count 1 involved conduct with a prepubescent female and a sixteen-year-old female, Count 2 involved conduct relating to trading child pornography and videos of other individuals. Yet, as the court noted, what the Guidelines calculation did not capture was that Fleischer had sexually abused Minor Victim #1, and that Minor Victim #1 continues to face struggles because of that sexual abuse. (*See* R. 28: Sealed PSR, PageID 105: "Minor Victim #1 suffers from multiple conditions that are potentially related to being abused by Fleischer, including an eating disorder and cutting herself.")

The court also noted the utilitarian aim of imposing a sentence to protect the public, particularly given Fleischer's secret sexual attraction to children as young as age six, his sexual abuse of children between the ages of nine and eleven, and the fact that he maintained an ongoing sexual relationship with a sixteen-year-old female. Relatedly, when addressing Fleischer's criminal history, the court indicated that it was unusual for a defendant to have such an extensive criminal history in the context of a child pornography case.

Further, the court went on to consider Fleischer's arguments in opposition to the sentencing enhancements and Guidelines calculations. However, here, the court reminded the parties that those calculations are merely a starting point—"not the end point and don't mandate a sentence less than the maximum." (R. 42: Sent. Trans., PageID 278). The court then referenced the need for the sentence to provide just punishment, given the court's conclusion that the thousands of images Fleischer possessed, the victims in those images, and the other victims of Fleischer's sexual abuse, confirmed the danger he poses to children and their families.

Therefore, based on the court's consideration of all of the factors set forth under § 3553(a), and its clearly stated considerations in light of each factor, we hold that the sentence was appropriate and no error was committed in the imposition of the 327-month sentence for Count 1 and consecutive term of 120 months as to Count 2, which resulted in a collective sum of 447-months' imprisonment. Furthermore, we hold that the district court did not err in finding that consecutive sentences are necessary in light of Fleischer's egregious conduct and the necessity of removing a sexual predator from society for a significant period of time.

With this in mind, Fleischer's assertion that the court inappropriately emphasized the seriousness of his offenses, is of no avail. As mandated by the Guidelines themselves, and our court's precedent, a sentence "within a properly calculated Guidelines range . . . is entitled to a presumption of reasonableness on review," *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008), and a district court "commits no error by focusing on an aspect of an offense under the advisory [G]uidelines and also in applying the 3553(a) factors," *United States v. Baines*, 651 F. App'x 411, 414 (6th Cir. 2016). Because Fleischer's argument here "boils down to an assertion that the district court should have balanced the 3553(a) factors differently, it is 'simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instances we would have imposed the same sentence.'" *Sexton*, 512 F.3d at 332 (quoting *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)).

Moreover, "[n]ot all [Section 3553(a) factors] are important in every sentencing; often one or two prevail, while others pale." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). And, "a district court may place great weight on one factor if such weight is warranted under the facts of the case." *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2012) (citing *United States v. Zobel*, 696 F.3d 558, 571–72 (6th Cir. 2012)). Furthermore, "[w]here a district court explicitly or implicitly considers and weighs all pertinent factors, a defendant clearly bears a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." *Id.* (alteration in original) (quoting *United States v. Thomas*, 437 F. App'x 456, 458 (6th Cir.2011)). And, here, for the reasons explained above, Fleischer has not satisfied that burden.

To be sure, Fleischer's sentence is lengthy and does exceed the parties' agreed-upon sentencing recommendations under the plea agreement. However, in imposing this sentence, the district court properly considered the aggravating factors and facts underlying this case in light of the § 3553(a) factors. There was no abuse of discretion. Therefore, Fleischer's sentence was not substantively unreasonable. *See United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006).

## III.

In light of the above, we **AFFIRM** Fleischer's sentence as both procedurally and substantively reasonable.