RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 23-5318

*v.*

LEON BURNETT HENSLEY,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:21-cr-00112-1—Eli J. Richardson, District Judge.

Argued: March 20, 2024

Decided and Filed: August 7, 2024

Before: KETHLEDGE, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Michael C. Holley, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Rascoe S. Dean, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael C. Holley, Dumaka S. Shabazz, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Rascoe S. Dean, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

CHAD A. READLER, Circuit Judge. Leon Hensley surreptitiously recorded minors using the bathroom. He pleaded guilty to 25 counts of production and attempted production of child pornography. The district court sentenced him to 293 months of confinement. On appeal,

Hensley alleges two sentencing errors: (1) the district court impermissibly double counted when calculating his offense level; and (2) the district court misunderstood its discretion to depart from the Guidelines.  Seeing no error on either front, we affirm.

**I.**

Leon Hensley was employed as a high school nurse.  While in that role, Hensley sent an inappropriate photo to a student, sparking an investigation by law enforcement.  Eventually, officers discovered that Hensley had hidden a camera in the nurse's office bathroom stall.  A search of his cell phone and computer uncovered videos of 57 students using those facilities.  Officers also found multiple "upskirt" recordings made at the school as well as photos from inside a tanning bed at an unknown location.

A grand jury indicted Hensley on 25 counts of production and attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) (sexual exploitation of children).  He pleaded guilty to all 25 counts.

During the sentencing phase, the probation office, as is customary, recommended Guidelines calculations to the district court.  Included in those calculations was a suggested five-level adjustment to Hensley's offense level under U.S.S.G. § 3D1.4 (determining combined offense level for offenders with multiple offense groups) for having multiple counts of similar severity.  The probation office also recommended that the district court find that Hensley engaged "in a pattern of activity involving prohibited sexual conduct" under § 4B1.5(b)(1) (repeat and dangerous sex offender against minors), which added another five points to Hensley's offense level.

Together, these calculations contributed to an offense level of 43, which, even with a criminal history category of one, triggered a Guidelines recommendation of life imprisonment. Each count to which Hensley had pleaded guilty, however, carried a statutory maximum of 30 years.  *See* 18 U.S.C. § 2251(e).  As a result, the Guidelines recommendation was adjusted to 9,000 months (25 counts x 30 years = 750 years or 9,000 months).  *See* U.S.S.G. § 5G1.1(a) (adjusting Guidelines calculation based on statutory maximum).

Hensley objected to the application of both § 3D1.4 and § 4B1.5(b)(1) as impermissible "double counting."  Generally speaking, that concept addresses a situation where the same conduct by a defendant is used as the basis for applying multiple enhancements to his Guidelines calculation.  *See, e.g.*, *United States v. Fleischer*, 971 F.3d 559, 570 (6th Cir. 2020).  According to Hensley, that is what happened here.  "[T]he very same conduct and harm—namely, *multiple* violations of § 2251(a)," he told the district court, triggered both enhancements the government recommended.  In the alternative, Hensley asked the district court to exercise its discretion to disregard § 4B1.5(b)(1) and sentence him as if it did not apply—using a range of 235 to 293 months.

The district court disagreed that any impermissible double counting had occurred in calculating Hensley's Guidelines range.  At the same time, the court recognized "that a [G]uideline[s] range [sentence was] not mandatory," and instead "serve[d] as a starting point and an initial benchmark."  As a result, the district court acknowledged it had "the ability to sentence anywhere from [the mandatory minimum of] 15 years to any number of months that could effectively amount to a life sentence."

The district court then explained its sentencing decision.  As a starting point, the district court believed it was appropriate "to think in terms of the 235 to 293 [month] range," the lower range proposed by Hensley.  At the same time, the 9,000-month recommendation, the district court recognized, would "have some impact" in the court's sentencing calculations, "meaning that [it] would [have] [otherwise] give[n] a lower sentence" absent the recommended Guidelines sentence and associated provisions.  The original calculation, in other words, was something the district court thought it "ha[d] to at least keep in mind."  Taking all of this together, the district court chose a sentence at the top of the adjusted range, 293 months.

Hensley objected.  He faulted the district court for feeling "somewhat tied to that 9,000-month" recommendation.  The district court responded that to "the extent it[']s authorized to completely ignore that higher [G]uideline[s] range," it was "hesitant to do that.  Fearing that any further departure would risk "an unwarranted sentencing disparity," *see* 18 U.S.C. § 3553(a)(6), the district court overruled Hensley's objection.  This timely appeal followed.

**II.**

A.   We begin with Hensley's claim that the district court entered a procedurally unreasonable sentence by impermissibly "double counting" his wrongful conduct in its Guidelines calculations.  *See United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). When, as here, the facts are undisputed, we review de novo the legal conclusion of whether a particular Guidelines provision applies.  *See, e.g.*, *United States v. Williams*, 709 F.3d 1183, 1185 (6th Cir. 2013).

At the outset, it is worth taking stock of the evolution of the double-counting doctrine Hensley invokes.  That evolution began over three decades ago in *United States v. Romano*, 970 F.2d 164 (6th Cir. 1992).  There, we announced an aversion to double counting during the sentencing process.  "[I]f certain conduct is used to enhance a defendant's sentence under one enhancement provision," we explained, "the defendant should not be penalized for that same conduct again under a separate provision whether or not the Guidelines expressly prohibit taking the same conduct into consideration under two separate provisions."  *Id.* at 167.  Before a sentencing court could apply both provisions, we required "a clear expression of legislative intent [to do so]."  *Id.* (citation omitted).  In effect, *Romano* adopted what has come to be known as a "strong-form substantive canon[]," one that created a rebuttable presumption against double counting.  *Biden v. Nebraska*, 143 S. Ct. 2355, 2376 (2023) (Barrett, J., concurring).

From today's vantage point, that approach raises a host of jurisprudential concerns.  Start with the two pillars underlying our holding in *Romano*.  One, we justified our approach as "consistent with [two] Supreme Court decisions," *Simpson v. United States*, 435 U.S. 6 (1978), and *Busic v. United States*, 446 U.S. 398 (1980), both of which, we noted, "required a clear expression of legislative intent to apply sentence enhancement provisions cumulatively." *Romano*, 970 F.2d at 167.  Looking back, *Simpson* and *Busic* employed what has come to be known as a purposivist approach to the law.  Rather than focusing on the statutory text at issue in those cases, the Supreme Court instead asked whether applying two separate criminal statutory penalties to the same conduct was a result consistent with the purpose of the provisions at issue. *See Busic*, 446 U.S. at 401; *Simpson*, 435 U.S. at 8, 12; *see also Simpson*, 435 U.S. at 16–20 (Rehnquist, J., dissenting).  The task of divining that purpose turned the Supreme Court's

attention primarily to legislative history. And in both cases, it read those congressional debates to say that Congress had not intended for both penalties to apply. *Busic*, 446 U.S. at 404–07; *Simpson*, 435 U.S. at 13–16.

This means of statutory interpretation is now disfavored. Rather than attempting to discern a law's purpose through non-textual means, courts routinely interpret a law based on its text's ordinary meaning. *See Carcieri v. Salazar*, 555 U.S. 379, 392 (2009). The use of legislative history has been all but discontinued. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) ("[L]egislative history is not the law."). Even if that were not the case, as to *Simpson* and *Bustic* specifically, it is unclear how the legislative history underlying the statute at issue there would have much relevance in interpreting what is at issue here—namely, Sentencing Guidelines adopted by the United States Sentencing Commission. *See* 28 U.S.C. § 994(a)(1) (requiring the Commission to adopt and publish Sentencing Guidelines).

Two, *Romano* justified its conclusion as "consistent with the general rule of lenity in criminal cases." 970 F.2d at 167. Here too, history is not on *Romano*'s side. In *Romano*'s day, courts applied the rule of lenity when there was mere textual "ambiguity." *See, e.g.*, *Simpson*, 435 U.S. at 14 (citations omitted). Since then, the Supreme Court has clarified that the rule's application is limited to situations where, "after seizing everything from which aid can be derived, there remains grievous ambiguity." *Pugin v. Garland*, 599 U.S. 600, 610 (2023) (cleaned up).

Reflective of these developments, our cases addressing double-counting concerns have moved away from the strong-form substantive canon adopted in *Romano*, in at least two ways. First, instead of merely looking at whether two provisions punish "the same conduct," *Romano*, 970 F.2d at 167, we now ask whether "precisely the same aspect" of the conduct is covered by both provisions. *Fleischer*, 971 F.3d at 570 (quoting *United States v. Moon*, 513 F.3d 527, 542 (6th Cir. 2008)). Put another way, we no longer require a clear statement to punish different aspects of the same conduct so long as we can discern from the text that both enhancements have independent force.

Second, even if two provisions rely on precisely the same aspect of a defendant's conduct, double counting is permissible if Congress or the Sentencing Commission intended as much—a conclusion we decipher by looking to the relevant text. *Id.* at 570–71. The Guidelines, we have observed, "should be interpreted as if they were a statute." *Id.* at 571 (quoting *United States v. Farrow*, 198 F.3d 179, 194 (6th Cir. 1999)). And we "follow [the] clear, unambiguous language [of the Guidelines] if there is no manifestation of a contrary intent." *Id.* In short, we give the text the primacy it deserves. *Id.*; *see also Rudisill v. McDonough*, 601 U.S. 294, 315 (2024) (Kavanaugh, J., concurring) (questioning the validity of a substantive canon that is based on "a loose judicial assumption about congressional intent" and "appears to have developed almost by accident"). In other words, double counting is permitted when the text calls for it. *See, e.g.*, *United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir. 2007).

One example is *Fleischer*. There, the defendant pleaded guilty to one count of sexual exploitation of a minor and admitted to similar conduct involving a second minor. 971 F.3d at 561–62. Due to those admissions, the government sought to enhance the defendant's sentence by application of both § 2G2.1(d)(1), which applies when there are multiple victims, and § 2G2.2(b)(5), which punishes a pattern of activity. *Id.* at 562. We affirmed the district court's application of both provisions, agreeing that doing so did not amount to impermissible double counting. *Id.* at 571–72. That was so because the provisions were not "premised on the 'same type of harm,'" and, regardless, nothing in the text of the Guidelines indicated an intent not to apply both. *See id.*

As these developments confirm, a straightforward interpretation of the text of the Guidelines will suffice in most instances, leaving no need to resort to a judicially devised practice against "impermissible double counting." *Farrow*, 198 F.3d at 195.

Taking that approach here, whether § 3D1.4 and § 4B1.5(b)(1) cover "precisely the same aspect of [Hensley's] conduct" is beside the point. *Fleischer*, 971 F.3d at 570 (citation omitted). For even if so, that is not a concern if "the Sentencing Guidelines expressly mandate double counting." *Id.* (citation omitted). And in this instance, they do. Section 4B1.5(b)(1) says "[t]he offense level shall be 5 plus the offense level determined under Chapters Two and Three." The use of the term "plus" is "clear, unambiguous language" supporting applying § 4B1.5(b)(1) on

top of any provisions from Chapters Two and Three, including § 3D1.4. *See Fleischer*, 971 F.3d at 571. Hensley cites "no manifestation of contrary intent" elsewhere in the Guidelines. *Id.*

Decisions from other circuits support the application of a § 4B1.5(b)(1) enhancement even when a related sentencing provision also applies. One is *United States v. Cifuentes-Lopez*, 40 F.4th 1215 (10th Cir. 2022). There, the defendant pleaded guilty to having commercial sex with two minors. *Id.* at 1217. The Tenth Circuit affirmed application of both § 3D1.4 and § 4B1.5(b)(1). Employing a textualist approach, the Tenth Circuit explained that the term "plus" in § 4B1.5(b)(1) indicated a "cumulative application." *Id.* at 1220. The same was true in *United States v. Von Loh*, 417 F.3d 710 (7th Cir. 2005), where the defendant pleaded guilty to having sex with a minor on multiple occasions, *id.* at 711. The Seventh Circuit affirmed the application of both § 3D1.2 and § 4B1.5(b)(1) because "[t]he word 'plus' indicates that the Sentencing Commission intended that the repeat sex offender enhancement be imposed in addition to calculations made [in Chapter 3]." *Id.* at 715. In addition to these examples in which § 4B1.5(b)(1) was paired with an enhancement from Chapter 3 of the Guidelines, other cases have done the same with enhancements found in Chapter 2. *See United States v. Seibert*, 971 F.3d 396, 400–01 (3d Cir. 2020); *United States v. Dowell*, 771 F.3d 162, 170 (4th Cir. 2014).

Hensley's counterarguments are unpersuasive. He begins by invoking *Farrow*, where we found two Guidelines provisions concerned "the same aspect" of the defendant's conduct—the use of a dangerous weapon—and thus could not both be applied. 198 F.3d at 194–95. That holding has little purchase here, for two reasons. First, *Farrow* relied primarily on the court-made rebuttable presumption first adopted in *Romano*. *See id.* at 190–94. As discussed, that rule undervalued the role of text and has since been cabined. Second, even if § 3D1.4 and § 4B1.5(b)(1) address "the same aspect" of Hensley's conduct, like in *Farrow*, both may be applied because the text of § 4B1.5(b)(1) instructs courts to apply it in addition to calculations from Chapters Two and Three. Put differently, in this instance, the Guidelines "expressly mandate double counting," unlike in *Farrow*. *Id.* at 194.

Next, Hensley attempts to distinguish *Fleischer*. As discussed, *Fleischer* concerned a similar situation: a multiple-victim provision and a pattern-of-activity provision. 971 F.3d at 570. Hensley accepts that Fleischer "deserved extra punishment" because he "produc[ed] child

pornography with multiple minors" and had a "history of sexually molesting each minor multiple times." Yet he fails to explain how that same logic does not apply to his offenses, or why we should ignore the text of the Guidelines.

Lastly, Hensley points to a potential unfairness in the Guidelines. Under the right circumstances, § 4B1.5(b), which applies to someone without a previous sexual offense conviction, seemingly can yield a higher sentence than § 4B1.5(a), which applies to repeat sexual offenders. As a result, Hensley says, his range would have been lower under § 4B1.5(a) if he had previously been convicted of sexually abusing a minor. To some degree, he has a point. But it is a policy point, not an interpretive one. And this Court does not entertain such arguments when interpreting text. Instead, we apply the Guidelines as written. *See Fleischer*, 971 F.3d at 571.

B. Next, we consider Hensley's claim that the district court misunderstood its discretion to deviate from the Guidelines. We review this preserved question of procedural reasonableness for an abuse of discretion. *See, e.g.*, *United States v. Jones*, 81 F.4th 591, 601 (6th Cir. 2023) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). In so doing, we presume that the district court understood its discretion to deviate from the Guidelines "absent clear evidence to the contrary." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008) (citation omitted).

The Guidelines are "effectively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). For the district court, then, while it is required to "give respectful consideration to the Guidelines," it may "tailor [a] sentence in light of other statutory concerns as well." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (citations omitted). Said differently, the district court "must treat the Guidelines as the starting point and the initial benchmark" for sentencing purposes, but it may deviate as it sees fit based on the 18 U.S.C. § 3553(a) factors. *Id.* at 108–09 (quotation omitted). Yet even where a district court "disagrees" with the Guidelines, it bears repeating, it is not required to reject them. *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011). Again, "sentencing is a matter of reasoned discretion, and our review is highly deferential." *United States v. Tellez*, 86 F.4th 1148, 1154 (6th Cir. 2023) (cleaned up).

We see no such abuse here. To its credit, the district court provided a lengthy explanation of its sentencing rationale. At the start, the court noted it was "aware that a [G]uideline[s] range

is not mandatory," and that the court thus enjoyed "the ability to sentence anywhere from [the mandatory minimum of] 15 years to any number of months that could effectively amount to a life sentence." Likewise, the court noted that the Guidelines range "serve[d] as a starting point and an initial benchmark," but it acknowledged that its true task was to fashion a sentence "sufficient but not greater than necessary to meet the recognized goals of federal sentencing." *See Kimbrough*, 552 U.S. at 108–09 (noting the Guidelines are "the starting point and the initial benchmark" but § 3553(a) governs).

The sentencing decision itself reflected this understanding. Acknowledging that, as a legal matter, § 4B1.5(b)(1) applied to Hensley's conduct, the district court nevertheless deemed that outcome "absurd." In that spirit, the court, after considering the § 3553(a) factors, chose not to use the 9,000-month recommendation. Instead, it employed the hypothetical range of 235 to 293 months, the one that would have governed had § 4B.5(b)(1) not applied. At the same time, the district court decided to give the actual Guidelines calculation "some impact." It gave the 9,000-month recommendation marginal weight to avoid "an unwarranted sentencing disparity," one of the mandatory statutory considerations. 18 U.S.C. § 3553(a)(6). Doing so led to imposition of a 293-month sentence, at the top of the hypothetical Guidelines range.

All things considered, the district court's calculation was the product of discretion. Even if one could read the record to reveal a misunderstanding of that discretion, there is not "clear evidence" of such an error. *Santillana*, 540 F.3d at 431; *see also United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021) (noting the district court was "far from misunderstanding its own authority" when it declined to exercise its discretion to vary downward (cleaned up)). Accordingly, we see no basis to disturb Hensley's sentence.

Resisting this conclusion, Hensley points to other portions of the district court's explanation. But these snippets ignore the broader context of the court's analysis. In isolation, a statement might be read to reflect a sense of obligation to follow the Guidelines. But when read alongside the district court's broader explanation, those statements reveal a discretionary decision to give the Guidelines some weight. For instance, the district court thought it was "appropriate, in [its] discretion under § 3553(a), to think largely, although not exclusively" in the hypothetical non-§ 4B1.5(b)(1) range. The court similarly noted that it "ha[d] to at least keep

[the Guidelines calculation] in mind." And, again, notwithstanding these isolated statements, the district court exercised its broad discretion by departing significantly from the 9,000-month recommendation—strong evidence that it understood the scope of its discretion.

The lone case Hensley cites, *United States v. Preacely*, 628 F.3d 72 (2d Cir. 2010), is factually dissimilar. In *Preacely*, there was strong evidence that the district court misunderstood its discretion. The court said: "I may not ignore [the defendant's] prior record. I may not ignore the [G]uidelines." *Id.* at 81. That is unlike here, where the district court repeatedly demonstrated it understood that the Guidelines were advisory. Among other observations, the district court explained that "a [G]uideline[s] range is not mandatory," and that the court had "the ability to sentence anywhere" above the mandatory minimum. Thus, the isolated statement that the court "ha[d] to at least keep [the Guidelines] in mind," when viewed in context, merely reflected that the district court was utilizing its discretion to give the Guidelines some weight. At day's end, there is not "clear evidence" to overcome the presumption that the district court understood the scope of its discretion. *Santillana*, 540 F.3d at 431.

*        *        *        *        *

We affirm the judgment of the district court.