RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 18-3345

*v.*

JOHN ANDERSON RANKIN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:15-cr-00168-1—Edmund A. Sargus Jr., District Judge.

Argued:  May 2, 2019

Decided and Filed:  July 12, 2019

Before:  MOORE, SUTTON, and MURPHY, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Keith A. Yeazel, KEITH A. YEAZEL LAW OFFICE, Columbus, Ohio, for
Appellant.  Noah Litton, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for
Appellee. **ON BRIEF:**  Keith A. Yeazel, KEITH A. YEAZEL LAW OFFICE, Columbus, Ohio,
for Appellant.  Daniel A. Brown, UNITED STATES ATTORNEY'S OFFICE, COLUMBUS,
Ohio, for Appellee.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  Defendant John Rankin knowingly violated
several tax laws in operating his companies, including by failing to turn over to the IRS
employees' withholding taxes and inaccurately reporting his own earnings.  The IRS investigated

Rankin and his businesses, first civilly and then criminally. Rankin interfered with and delayed the investigations. He was charged with and convicted of seventeen tax-related counts, sentenced to sixty months in prison, and required to pay a sizable restitution. We **AFFIRM** his conviction and sentence but modify his judgment to reflect that he need not pay restitution until his term of supervised release commences.

## I. BACKGROUND

Rankin owned Connectivity Systems, Inc. ("CSI"), a software development and management business, a restaurant called Tuscan Table, and an umbrella organization called Rankin Enterprises, LLC. R. 179 (Trial Tr. at 205–06) (Page ID #4023–24). For years, Rankin failed to pay employee payroll withholdings to the IRS, and he disbursed money from CSI to himself and his other companies as "tangible wages" and "research and development" compensation without reporting it as wages. *Id*. at 206–21 (Page ID #4024–39); R. 181 (Trial Tr. at 213–220) (Page ID #4522–29).

Rankin's tax practices were first scrutinized in 2004 by Rea & Associates, a private auditing firm hired by banks that had been lending to Rankin. R. 179 (Trial Tr. at 204–05) (Page ID #4022–23). The audits uncovered that Rankin had been disbursing CSI funds to himself and Rankin Enterprises, classifying them as "royalties" or "research and development," and failing to report them as wages to the IRS. *Id*. at 218 (Page ID #4036); R. 178 (Trial Tr. at 42–43, 112–29, 140–42) (Page ID #3626–27, 3696–3713, 3724–26). Rankin admitted to the Rea auditors that the payments were employee compensation, not royalties. R. 178 (Trial Tr. at 142) (Page ID #3726).

The IRS initiated a civil investigation into Rankin's businesses' unpaid tax liabilities and unfiled tax returns in 2008 and contacted Rankin to inquire about them. R. 181 (Trial Tr. at 95–96, 100–03) (Page ID #4404–05, 4409–12). He continued to fail to file tax returns for his businesses and proved uncooperative in the IRS investigation. When an IRS investigator informed Rankin that she planned to file a notice of tax lien, he responded that he would make a payment every day so that it would be difficult for the IRS to know the balance owed and file the lien. *Id*. at 115–16, 118, 122 (Page ID #4424–25, 4427, 4431). Rankin also claimed that a fire

had destroyed some financial records, leading to the delay in his tax payments. *Id*. at 156 (Page ID #4465). Evidence presented at trial suggested that the fire had not in fact encumbered his ability to access the financial records or satisfy his tax obligations. *Id.* at 156, 158–59 (Page ID #4465, 4467–68); R. 179 (Trial Tr. at 203–04) (Page ID #4021–22). For example, the jury saw a letter that Rankin had written to CSI employees bragging about his efforts to beat the IRS at its own game, R. 190 (Exhibit at 3–6) (Page ID #5769–72), and a special agent who worked on the case testified that the records were readily available elsewhere. R. 182 (Trial Tr. at 208–09) (Page ID #4778–79).

The IRS eventually initiated a criminal investigation into Rankin's tax activities. Rankin was informed in person by an IRS officer that he was under investigation in April 2011. R. 181 (Trial Tr. at 231–33) (Page ID #4540–42). In May 2011, Rankin filed five amended individual income tax returns for the years 2005 through 2009. These tax returns falsely declared negative adjusted gross income and no federal tax due. Rankin achieved this outcome by declaring some previously undisclosed income and claiming suspicious new offsets to which he was not entitled. *See, e.g.*, R. 182 (Trial Tr. at 32–35) (Page ID #4602–4605).

On July 7, 2015 Rankin was charged with seven counts of failure to account for and pay over withholding, FICA, and Medicare taxes involving Rankin Enterprises and Tuscan Table in violation of 26 U.S.C. § 7202, six counts of subscription of false individual income tax returns in violation of 26 U.S.C. § 7206(1), three counts of subscription of false CSI income tax returns in violation of the same statute, and one count of corruptly endeavoring to obstruct the due administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a). R. 1 (Indictment at 1–5) (Page ID #1–5).

Rankin moved to dismiss Count 17 of the indictment, which charged him with corruptly endeavoring to obstruct the due administration of the tax laws in violation of 26 U.S.C. § 7212(a). R. 50 (Mot. to Dismiss Count 17 of Indictment) (Page ID #1249). Count 17 alleged that "[f]rom on or about January 1, 2005, through the date of the filing of this Indictment [on July 7, 2015]" Rankin had "willfully misl[ed] agents of the IRS by making false and misleading statements to those agents and by concealing information sought by those agents who he well knew were attempting to ascertain income, expenses and taxes for [Rankin] and his various

business entities and interests." R. 1 (Indictment at 5) (Page ID #5). Rankin argued that this language was vague, mostly parroted the language of the statute without adding factual detail, and encompassed an approximately ten-year period without highlighting specific instances of misconduct. *See* R. 50 (Mot. to Dismiss Count 17 of Indictment at 5) (Page ID #1253). He further argued that the language of Count 17 was so vague that it was impossible to tell whether the challenged conduct was already covered by one of the other counts in the indictment, violating the Double Jeopardy Clause. *Id.*

The district court ordered the government to respond to Rankin's motion either with a memorandum or with a bill of particulars. R. 89 (Jul. 13, 2017 Order at 3) (Page ID #1624). The government responded with a memorandum arguing that Rankin had been provided the relevant evidence supporting Count 17 in discovery and highlighting particular examples of occasions on which he had violated the statute. R. 93 (Mem. Contra Mot. to Dismiss Count 17) (Page ID #1640). The government also provided Rankin with a draft exhibit list including evidence it intended to introduce at trial. It argued that the indictment covered such a lengthy time span because the investigation had lasted many years and Rankin had impeded the investigation throughout. *Id.* at 4 (Page ID #1643).

The district court determined that this response was adequate and denied Rankin's motion to dismiss Count 17. R. 95 (Aug. 2, 2017 Op. and Order at 6–7) (Page ID #1669–70). It concluded that "[t]he indictment [was] sufficient to advise Defendant that the Government alleges he had taken [willfully obstructive] actions while he was aware that there was some pending IRS action" because the government's proffered exhibit list included examples of Rankin's obstructive behavior. *Id.* at 6 (Page ID #1669).

Rankin went to trial and was convicted of all counts. Prior to sentencing, Rankin objected to many aspects of the presentence investigation report (PSR) produced by the Probation Office. *See* R. 189 (Tr. at 3–53) (Page ID #5667–5719). The objections relevant to this appeal fall into two categories. First, Rankin challenged the district court's consideration of uncharged conduct in determining his sentence, tax loss, and restitution. Second, he challenged the PSR's calculation of the amount of tax loss which characterized money that CSI had paid to Rankin as ordinary income rather than constructive dividends.

The district court overruled both of these objections to the PSR. On April 3, 2018 the district court sentenced Rankin to sixty months of incarceration on Counts 1–6 and thirty-six months on Counts 7–17, to run concurrently; judgment was entered the following day. R. 172 (Judgment at 1–4) (Page ID #3233–36). The district court also ordered Rankin to pay $7,101,018.72 in restitution. *Id*. at 6–8 (Page ID #3238–40). Rankin filed his notice of appeal on April 12, 2018. R. 174 (Notice of Appeal) (Page ID #3247).

## II.  DISCUSSION

Rankin raises five challenges on appeal. We reject all except for the last.

### A.  Count 17 of the indictment

First, Rankin argues that Count 17 of the indictment failed to state an offense because it did not adequately allege either a nexus between Rankin's evasive conduct and the IRS investigation or that the investigation was pending at the time of his conduct. This claim fails because the indictment adequately alleged the elements of the crime.

We review de novo a district court's denial of a motion to dismiss an indictment on legal grounds, such as its failure to state an offense. *See United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008); *see also United States v. Olive*, 804 F.3d 747, 752 (6th Cir. 2015). Even if the indictment were insufficient to satisfy due process, "[a] constitutionally deficient indictment is subject to harmless-error review." *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (citing *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002)). Thus, we will reverse a conviction due to the insufficiency of the indictment only if the defendant's substantial rights are affected, meaning he can "show[] prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Cor-Bon Custom Bullet Co.*, 287 F.3d at 580 (quoting *United States v. Hathaway*, 798 F.2d 902, 911 (6th Cir. 1986)).

An indictment is "sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double

jeopardy."[1] *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005). On appeal, Rankin challenges the sufficiency of the indictment under the first prong only, claiming that it did not "contain[] the elements of the charged offense." *Olive*, 804 F.3d at 753; *see* Appellant Br. at 10; Reply Br. at 1. In particular, Rankin claims that the indictment alleged neither: (1) "a nexus between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action," Appellant Br. at 10, nor (2) that "Rankin was on notice that a proceeding was pending," *id.* at 11.

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)). The indictment must also include "such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* at 117–18 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).

We first analyze the elements of the offense charged as relevant to Rankin's challenges to the indictment. Section 7212(a)'s Omnibus Clause forbids "corruptly or by force or threats of force . . . obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of [the Internal Revenue Code]." *Marinello v. United States*, 138 S. Ct. 1101, 1105 (2018) (emphasis omitted) (quoting 26 U.S.C. § 7212(a)). In *Marinello*, the Supreme Court recently held that "the Government must show . . . that there is a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." *Id.* at 1109 (quoting *United States v. Aguilar*, 515 U.S. 593, 599 (1995)). The "routine, day-to-day work carried out in the ordinary course by the IRS, such as the review of tax returns," is not enough to constitute a "particular administrative proceeding." *Id.* at 1109–10. Rather, "the IRS's interest in a given taxpayer . . . [must have]

---

[1]When the defendant challenges the indictment for the first time after his conviction, the indictment is "construed liberally in favor of its sufficiency." *Olive*, 804 F.3d at 752 (quoting *United States v. Gibson*, 409 F.3d 325, 331 (6th Cir. 2005)). Because Rankin challenged Count 17 of the indictment early in the litigation, we do not liberally construe the indictment in favor of its sufficiency.

been piqued in a manner that is out of the ordinary." *United States v. Miner*, 774 F.3d 336, 346 (6th Cir. 2014). At trial, the government must also demonstrate that the IRS action was "pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant." *Marinello*, 138 S. Ct. at 1110. In the Sixth Circuit, the defendant must be aware that the IRS action was pending at the time of his obstructive conduct. *Miner*, 774 F.3d at 342–43.

We next scrutinize Rankin's indictment to see if it contains these two elements. Count 17 of the indictment alleged that Rankin

> willfully misl[ed] agents of the IRS by making false and misleading statements to those agents and by concealing information sought by those agents who he well knew were attempting to ascertain income, expenses and taxes for defendant and his various business entities and interests.

R. 1 (Indictment at 5) (Page ID #5).

We conclude that Rankin's indictment "contains the elements of the charged offense." *Olive*, 804 F.3d at 753. It does more than merely "track the language of the statute." *See United States v. Anderson*, 605 F.3d 404, 411–12 (6th Cir. 2010). It alleges a nexus between Rankin's misleading conduct and the agents' attempts "to ascertain [his] income, expenses and taxes," R. 1 (Indictment at 5) (Page ID #5), a particular investigation that went beyond the "routine, day-to-day work carried out in the ordinary course by the IRS, such as the review of tax returns." *Marinello*, 138 S. Ct. at 1110. The indictment also reflects that the investigation was pending and that Rankin was aware of it at the relevant time; it specifically notes that Rankin "well knew" that the agents were attempting to ascertain information about him when he misled them and concealed information from them. We therefore reject Rankin's challenges to Count 17 of the indictment.

## B. Lesser-included offense instruction

Second, Rankin argues that the district court should have instructed the jury on his proposed lesser-included offense under 26 U.S.C. § 7203 along with the actually charged greater offense under 26 U.S.C. § 7202. He fails, however, to establish that § 7203 qualifies as a lesser-

included offense.  We therefore conclude that the district court did not err by refusing to instruct the jury on it.

"[I]f a defendant asks for a lesser included offense instruction [to which he is entitled], it is generally reversible error not to give it." *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000).  "A defendant is entitled to an instruction on a lesser-included offense if:  '(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser.'"  *United States v. Jones*, 403 F.3d 817, 821–22 (6th Cir. 2005) (quoting *United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001)).

Counts 1 through 7 of the indictment charged Rankin with willful failure to account for and pay over tax in violation of 26 U.S.C. § 7202.  That statute makes it a felony for "[a]ny person required . . . to collect, account for, and pay over any tax imposed" to "willfully fail[] to collect or truthfully account for and pay over such tax."  26 U.S.C. § 7202.  At trial, Rankin requested that the jury also be instructed on his proposed lesser-included offense, willful failure to file return, supply information, or pay tax, in violation of 26 U.S.C. § 7203.  That statute makes it a misdemeanor for "[a]ny person required . . . to pay any estimated tax or tax, or required . . . to make a return, keep any records, or supply any information," to "willfully fail[] to [do so] at the time or times required by law or regulations."  26 U.S.C. § 7203.

Rankin fails to establish that the elements of the proposed lesser crime are "identical to part of the elements of the greater offense." *Jones*, 403 F.3d at 821 (quoting *Colon*, 268 F.3d at 373).  The government argues, and Rankin agrees, that § 7203 has an additional "temporal restraint," Appellee Br. at 27, because the failure to pay must occur "at the time or times required by law or regulations," 26 U.S.C. § 7203.  Section 7202 has no such temporal constraint.  Rankin argues that, because of its temporal constraint, all violations of § 7203 are a subset of all violations of § 7202 and that § 7203 therefore must be a lesser-included offense.

Rankin's conclusion does not follow from his premise, and the relationship between the two statutes here is not that contemplated by the lesser-included offense doctrine. "Where the lesser offense requires an element not required for the greater offense, no [lesser-included offense] instruction is to be given." *Waldon*, 206 F.3d at 605 (quoting *Schmuck v. United States*, 489 U.S. 705, 716 (1989)). To qualify for a lesser-included offense instruction, the *greater offense* must include some additional element that distinguishes it from the lesser-included offense, not the other way around. Here, Rankin's proposed lesser-included offense, § 7203, contains an extra element. Yes, it appears that each time a defendant violates § 7203 by failing to pay a tax, he also violates § 7202, meaning that those violations of § 7203 are a subset of violations of § 7202, but that alone does not make § 7203 a lesser-included offense of § 7202.

Explained another way, precisely because all violations of § 7203 for failing to pay a tax necessarily constitute violations of § 7202, Rankin cannot meet the fourth prong of the test: demonstrating that "the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." *Jones*, 403 F.3d at 821–22 (quoting *Colon*, 268 F.3d at 373). If a defendant is convicted for violating the proposed lesser offense under § 7203, he cannot logically be acquitted of the greater under § 7202. The district court correctly concluded that there was no "theory from the evidence presented that there could be an acquittal on the charged conduct that could still lead to a conviction on the lesser-included." R. 186 (Trial Tr. at 7) (Page ID #5395). Rankin's lesser-included offense claim fails.

## C. Reliance on uncharged conduct

Third, Rankin argues that the district court's consideration of uncharged conduct in calculating tax loss, sentence, and restitution violated the presumption of innocence. When assessing the district court's sentencing decisions under the Guidelines, we review legal conclusions de novo. *United States v. Gale*, 468 F.3d 929, 934 (6th Cir. 2006). The district court did not err by considering uncharged conduct.

District courts may consider relevant uncharged or even acquitted criminal conduct in sentencing if the court "finds facts supporting that conduct by a preponderance of the evidence."

*United States v. White*, 551 F.3d 381, 383–84 (6th Cir. 2008) (en banc); *see also United States v. Rayyan*, 885 F.3d 436, 441 (6th Cir. 2018). This general principle applies to tax crimes as well. *See United States v. Harvey*, 996 F.2d 919, 922 (7th Cir. 1993) ("Tax offenses, like embezzlements and drugs crimes, fall within the rule that relevant conduct includes the whole scheme."); *United States v. Daniel*, 956 F.2d 540, 544 (6th Cir. 1992). "For sentencing purposes, the use of tax loss resulting from uncharged conduct is authorized by § 1B1.3, the 'relevant conduct' provision of the Guidelines." *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994). The application notes to § 2T1.1 of the Guidelines provide that when determining tax loss "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1 app. n.2.

Rankin's sole argument challenging the district court's reliance on uncharged conduct is based on the Supreme Court's recent decision in *Nelson v. Colorado*, 137 S. Ct. 1249 (2017). He argues that *Nelson* rendered unconstitutional the longstanding practice of considering uncharged conduct at sentencing. His reading of *Nelson* is incorrect. *Nelson* did not curtail courts' ability to sentence based on uncharged conduct. Rather, it simply held that when a defendant's conviction has been overturned, he "should not be saddled with any proof burden" in his efforts to reclaim fines or restitution associated with the overturned conviction. *Id*. at 1256. This holding is inapposite to Rankin's challenge to the district court's consideration of the uncharged conduct in calculating the tax loss and his sentence. *See United States v. McShan*, 757 F. App'x 454, 466–67 (6th Cir. 2018) (concluding that *Nelson* did not impact the sentencing court's ability to consider acquitted conduct). Accordingly, because the sentencing court may consider relevant uncharged criminal conduct and Rankin has neither argued nor proved that the uncharged conduct the district court considered was clearly unrelated to his crime, we reject this challenge to Rankin's sentence and the tax loss and restitution calculations.

**D. Calculation of tax loss**

Fourth, Rankin argues the district court erred by relying on the PSR's calculation of the tax loss rather than Rankin's alternative calculation, which he claims was more accurate. This

claim fails because the district court did not clearly err by concluding that Rankin's alternative calculation was not more accurate than the PSR's tax loss calculation.

When reviewing the district court's sentencing decisions under the Guidelines, we review legal conclusions de novo and findings of facts, such as whether an expenditure was a constructive dividend, for clear error. *Gale*, 468 F.3d at 934; *DKD Enters. v. Comm'r*, 685 F.3d 730, 735 (8th Cir. 2012). The Base Offense Level used in sentencing for tax crimes is calculated based on the tax loss. U.S.S.G. § 2T1.1(a). The Guidelines provide the courts with instructions on how to calculate the tax loss. *See* U.S.S.G. § 2T1.1(c). "The district court 'need only make a reasonable estimate of the loss,'" *Olive*, 804 F.3d at 758 (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)), and its estimate "is entitled to 'appropriate deference,'" *id.* (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)). In certain situations, "such as when indirect methods of proof are used" to calculate tax loss, "the amount of the tax loss may be uncertain" and "the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1 app. n.1. "[I]n income tax cases in which the tax loss may not be reasonably ascertainable . . . the 'presumptions' set forth [in the Guidelines] are to be used unless the government or defense provides sufficient information for a more accurate assessment of the tax loss." *Id.*

The district court adopted the PSR's tax loss calculation, concluding that it was supported by a preponderance of the evidence. R. 189 (Sentencing Tr. at 17) (Page ID #5683). The PSR's calculations were supported by the trial testimony of IRS expert witness Amanda Schafer and IRS Special Agent Markita Seldon, bank records, and the Guidelines' prescribed presumptions. PSR at 10–13, 33, 44; R. 186 (Trial Tr. at 87–88) (Page ID #5475–76) (testimony of Amanda Schafer); R. 182 (Trial Tr. at 228–252) (Page ID #4798–4822) (testimony of Amanda Schafer); R. 182 (Trial Tr. at 6–69) (Page ID #4576–4639) (testimony of Markita Seldon).

Rankin argues that the district court erred by rejecting his alternative tax loss calculations because the PSR's tax calculation, adopted by the district court, used indirect methods of proof to calculate the tax loss, and he "provide[d] sufficient information for a more accurate assessment of the tax loss." Appellant Br. at 23 (quoting U.S.S.G § 2T1.1 app. n.1). Rankin argues that the report of auditor Rebekah A. Smith provides the basis for his assertedly more accurate assessment of tax loss.

Smith's report, however, was created for an entirely different purpose in a separate case and would have been an inappropriate foundation on which to assess the tax loss. The report was prepared as part of a civil suit brought against Rankin by a minority CSI shareholder who argued that he was entitled to payments from the company. PSR at 85–178 (Smith Report). Smith examined CSI's books and calculated what would have been an appropriate amount to pay to Rankin in wages based on industry standards. She then calculated how much Rankin had been paid over and above that amount, positing that such extra payments would normally be issued as "disbursements which represented a return on investment." *Id.* at 89. Smith's calculations were not offered as proof of what Rankin was *actually* paid in ordinary income versus in distributions or dividends, but rather they were presented as an example of what might have been an appropriate compensation-to-distribution ratio based on industry standards. Rankin himself admitted as much when, in delivering his own closing argument at trial, he stated: "I didn't think Rebekah Smith said anything that really mattered much. . . . She was hired by a third-party, and she had an objective. She was paid by a third-party to try and achieve a particular goal." R. 186 (Trial Tr. at 160) (Page ID #5548).

It makes sense that Rankin wanted the sentencing court to adopt Smith's counterfactual report, in which many of CSI's payments to him are recharacterized as distributions, not ordinary income, because Rankin argues that this would entitle him to pay a lower tax rate on them than the rate on salary income presumed under the Guidelines. *See* Appellant Br. at 25; *see also* U.S.S.G. § 2T1.1(c); *Menard, Inc. v. Comm'r*, 560 F.3d 620, 621–22 (7th Cir. 2009) (Posner, J.) (explaining that after 2003, when a payment from a corporation is treated as a salary rather than a dividend, the employee pays a higher tax on it). Rankin claims that characterizing the payments as qualified or constructive dividends rather than ordinary income would result in a $2,801,344.96 tax loss figure, Appellant Br. at 22, significantly less than the PSR's figure: $5,079,343.24.[2]

The district court, however, correctly concluded that "[t]he documents prepared by Ms. Smith were not to determine tax liabilities and really show nothing that would indicate that there were dividends paid in this case." R. 189 (Sentencing Tr. at 44) (Page ID #5710). Rankin did

---

[2]This number becomes $7,101,018.12 when prejudgment interest is added.

not "provide[] sufficient information for a more accurate assessment of the tax loss" by pointing to Smith's report, and therefore the district court was correct to rely on the Guidelines' presumptions.  U.S.S.G. § 2T1.1 app. n.1.

Furthermore, given the fact that Rankin himself labeled the payments as wages and compensation for services that he and his other companies provided CSI, we cannot say that the sentencing court clearly erred in its factual determination that the monies obtained by Rankin were ordinary income, not constructive dividends, which "are distributions of property made by the corporation to its shareholders out of its earnings and profits."  *United States v. Ellefsen*, 655 F.3d 769, 779 (8th Cir. 2011).  We reject Rankin's claim that the district court erred by adopting the PSR's tax loss calculation and rejecting his alternative calculation.

**E.  Immediate restitution**

Finally, Rankin argues that the district court erred by ordering immediate restitution to commence while he is still incarcerated, before the beginning of his term of supervised release.  To the extent that the district court's order was unclear or may be interpreted as calling for immediate restitution payments, we now modify the judgment to clarify that restitution payments shall commence only upon the beginning of Rankin's term of supervised release.

"A federal court cannot order restitution 'except when authorized by statute.'"  *United States v. Westbrooks*, 858 F.3d 317, 327 (5th Cir. 2017) (quoting *United States v. Love*, 431 F.3d 477, 479 (5th Cir. 2005)), *vacated on other grounds*, 138 S. Ct. 1323 (2018).  The government concedes that the district court has statutory authority to impose restitution in tax cases only as a term of probation or supervised release, not while the defendant is still incarcerated.  *See* Appellee Br. at 38 (citing U.S.S.G. § 5E1.1(a)(2); *United States v. Batson*, 608 F.3d 630, 635 (9th Cir. 2010)).

We believe the record is best read to reflect the district court's intention that Rankin's restitution payments commence only once he enters supervised release.  The judgment provides that "[w]ithin 60 days of the commencement of the term of supervised release, the probation officer shall recommend a payment schedule to the Court to satisfy any unpaid balance of the restitution.  The Court will enter an Order establishing a schedule of payments."  R. 172

(Judgment at 6) (Page ID #3238).  At sentencing, the district court stated that "[a]s a special condition of supervision . . . he will pay restitution in the amount just mentioned of $7,101,018.72," noting that "[w]ithin 60 days of this sentence, the probation officer will recommend a payment schedule with regard to the unpaid balance."  R. 189 (Tr. at 96) (Page ID #5762).  However, it does contain some statements that could be interpreted to mandate the restitution payments prior to Rankin's release from prison.  For example, the penultimate page of the judgment as it stands notes a "[l]ump sum payment of $7,102,718.72 due immediately."[3] R. 172 (Judgment at 8) (Page ID #3240).

In an abundance of caution, we modify the judgment to clarify that Rankin must begin to make restitution payments only upon the start of his term of supervised release.  *See Westbrooks*, 858 F.3d at 328; *see also* 28 U.S.C. § 2106 (providing statutory authority to modify the judgment); *United States v. Munoz,* 549 F. App'x 552, 555–56 (7th Cir. 2013) (per curiam).

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** Rankin's conviction.  We also modify Rankin's judgment to reflect clearly that restitution will become due only upon the beginning of his term of supervised release.

---

[3]This amount differs from the $7,101,018.72 restitution amount because it includes $1,700 in special assessments.