NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0181n.06

No. 21-5425

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>KENDALE WELBORN,</td><td>)</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Apr 29, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

Before: CLAY, GRIFFIN, and WHITE, Circuit Judges.

WHITE, J., delivered the opinion of the court in which CLAY and GRIFFIN, JJ., joined. CLAY, J. (pp. 17–19), delivered a separate concurring opinion.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Kendale Welborn appeals his 140-month sentence for conspiracy to distribute 500 grams or more of a mixture containing methamphetamine. He argues that his indictment was insufficient because he was charged with and pleaded guilty of conspiring to distribute a *mixture* containing methamphetamine but was sentenced based on a finding that his methamphetamine was *actual* methamphetamine. He also contends that the district court erred in following the Sentencing Guidelines because the Guidelines improperly treat offenses involving methamphetamine of higher purity more harshly than those involving methamphetamine of lower purity. For the reasons that follow, we **AFFIRM**.

**I.**

In March 2019, police officers in Manchester, Tennessee, stopped a vehicle driven by Defendant-Appellant Kendale Welborn. Welborn consented to a search of the vehicle, and the officers found a bag containing approximately 2.5 ounces (*i.e.*, more than 72 grams) of methamphetamine, digital scales, and approximately $1,130 in cash. The officers also found a key to a motel room rented by Welborn's co-defendant. In the room, the officers found Welborn's clothes and over 1.5 pounds (*i.e.*, more than 653 grams) of methamphetamine.

In February 2020, a federal grand jury returned a four-count indictment against Welborn and several co-defendants. The indictment charged Welborn with conspiring to distribute "500 grams or more of a mixture and substance containing a detectable amount of methamphetamine" in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. R.1, PID 1. It also charged Welborn with possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Pursuant to a written plea agreement, Welborn pleaded guilty to "[c]onspiracy to distribute 500 grams or more of a mixture and substance containing methamphetamine." R.72, PID 122. In exchange, the government agreed to dismiss the possession-with-intent-to-distribute count. It also agreed to a three-point reduction in the total offense level in consideration of Welborn's acceptance of responsibility. Welborn stipulated and agreed that the facts set forth in the plea agreement satisfied all the elements of the charged offense. He also agreed and acknowledged that: those facts "do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing;" both he and the government "retain[ed] the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case;" his sentence "will be determined by the Court after it receives the presentence investigation report from the United States Probation

Office and any information presented by the parties;" and "the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553." R.72, PID 123, 125.

The presentence investigation report (PSR) calculated a base offense level of 36, resulting in a total offense level of 33 after a three-point reduction for acceptance of responsibility. In calculating Welborn's base offense level, the PSR noted that Welborn's supplier told law enforcement officials that she supplied him with a total of two kilograms of methamphetamine. The PSR also relied on laboratory reports from the Drug Enforcement Agency (DEA) stating that the methamphetamine it tested was 100% pure, which exceeded the 80% threshold for considering the methamphetamine as actual methamphetamine. Under the Sentencing Guidelines, quantities of at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine result in a base offense level of 36, and the two kilograms of methamphetamine the PSR attributed to Welborn fell comfortably within that range. The PSR calculated a criminal-history category of V and, accordingly, a Guidelines imprisonment range of 210 months to 262 months.

Welborn objected to the PSR, noting that the PSR's finding that his methamphetamine was actual methamphetamine contradicted the indictment and plea agreement, which only held him responsible for a mixture containing methamphetamine. He argued that "Methamphetamine Actual and Methamphetamine mixture are separate crimes and require different elements of the crime itself and that he pled guilty to a mixture." R.141, PID 731. He also argued that he should only be held responsible for the methamphetamine found in his car and the motel room, as opposed to the two kilograms his source said she supplied him. According to Welborn, correctly calculated,

his base offense level was 30, resulting in a total offense level of 27 after a three-point reduction for acceptance of responsibility, and a Guidelines imprisonment range of 120 to 150 months.[1]

The government responded in opposition, arguing that "[t]he language of the indictment does not dictate the Guidelines range—the facts do." R.206, PID 1060. It urged the court to "reject any suggestion by [Welborn] that, because he pleaded to a mixture and substance containing methamphetamine, his Guidelines calculation categorically may not be based on an amount of methamphetamine (actual)." *Id.* In a slight deviation from the PSR, the government recommended a base offense level of 34.[2] Based on a total offense level of 31 after a three-point reduction for acceptance of responsibility, and a criminal-history category of V, the government recommended a Guidelines range of 168 to 210 months' imprisonment.

At sentencing, Welborn renewed his objection to the discrepancy in the purity of the methamphetamine as reflected in the PSR on the one hand, and the indictment and plea agreement on the other, and again argued that the methamphetamine found in the motel room, which was rented by his co-defendant, should not be attributed to him. The district court overruled both objections and accepted the government's Guidelines calculation. In doing so, the district court explained that it treated the 725.65 grams of methamphetamine found in Welborn's car and the motel room as actual methamphetamine based on the laboratory reports, but "did not incorporate the additional mixture based on the source's statement." R.238, PID 1536–37.

---

[1] Welborn also argued that to the extent an additional two kilograms of methamphetamine were attributable to him based on the statement from his source, his Guidelines imprisonment range should be 140 months to 175 months.

[2] In total, the government recovered and tested 725.65 grams of actual methamphetamine from Welborn's car and the motel room. Because it did not test or intend to produce evidence regarding the purity of the remainder of the methamphetamine the PSR attributed to Welborn, the government asked the district court to treat the remaining untested methamphetamine as a "mixture and substance" containing methamphetamine. The government calculated its proposed base offense level and Guidelines imprisonment range based on the "converted drug weight" of these two amounts.

The district court granted a downward variance and sentenced Welborn to 140 months' imprisonment, in part because Welborn's prior offenses were, in the court's view, relatively minor and a Guidelines imprisonment range would be "unduly harsh given Mr. Welborn's particular circumstances." R.238, PID 1537–41. It also dismissed the remaining count in accordance with the plea agreement.

Welborn timely appealed.

## II.

### A.

Welborn first argues that his indictment was insufficient because, although it charged him with conspiring to distribute a methamphetamine mixture, he was sentenced based on a finding that his methamphetamine was pure or actual methamphetamine. Welborn asserts that the indictment's failure to "state the specific purity level that the defendant is charged with," Appellant Br. at 15, which he contends is "an element of the crime itself," *id.* at 4, violated his "right to know exactly the crime that he [was] charged with." *Id.* at 16. We disagree.

### 1.

We review de novo the sufficiency of an indictment where a proper objection is made below. *United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020). But where the defendant fails to challenge the indictment's sufficiency in the district court, "the indictment must be construed liberally in favor of its sufficiency." *Id.* (quoting *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999)). An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see also United States v. Schaffer*, 586 F.3d 414, 422 (6th Cir. 2009). "An indictment is 'sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and

(3) protects the defendant against double jeopardy.'" *United States v. Rankin*, 929 F.3d 399, 404–05 (6th Cir. 2019) (quoting *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005)).  It must also include "such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."  *Id.* at 405 (quoting *Hamling v. United States*, 418 U.S. 87, 117–18 (1974)).

The government argues that because Welborn challenges the sufficiency of the indictment for the first time on appeal, this court should review his challenge for plain error.  We need not address this argument because Welborn's challenge fails even under de novo review, without construing the indictment liberally in favor of its sufficiency.  *See Rankin*, 929 F.3d at 405 n.1.

**2.**

Turning to the merits of Welborn's claim, we must first determine the elements of the charged offense, and then determine if the indictment adequately charges those elements.  "To sustain a conviction for drug conspiracy under section 846, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy."  *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007).  The indictment alleges that Welborn and his co-defendants:

> did combine, conspire, confederate, and agree to knowingly and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

R.1, PID 1.  Thus, the indictment adequately alleges that Welborn and his co-defendants agreed to violate federal drug laws, namely, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  It further alleges that they did so "knowingly and intentionally," and, finally, the indictment alleges that Welborn did in fact engage in the conspiracy.  We have also characterized a "sentence-enhancing drug quantity" as an element of an offense under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  *See*

*United States v. Hobbs*, 953 F.3d 853, 856 (6th Cir. 2020). The indictment here alleges the quantity of drugs involved. Accordingly, the indictment "contains the elements of the charged offense." *Rankin*, 929 F.3d at 404–05.

Welborn contends, however, that the indictment should have specified that his methamphetamine was actual methamphetamine rather than a mixture because the purity of the drugs is an element of the charged offense. Welborn cites no authority to support his position, and we conclude that, under the facts presented, Welborn's indictment was not insufficient for failing to specify the purity of his methamphetamine.

**3.**

The district court relied on the DEA laboratory reports in calculating Welborn's base offense level and Guidelines imprisonment range. Treating the 725.65 grams of methamphetamine found in Welborn's car and the motel room as actual methamphetamine, the district court arrived at a base offense level of 34 (reduced to 31 after a three-point reduction for acceptance of responsibility) and a Guidelines imprisonment range of 168 to 210 months. Had the district court instead treated the 725.65 grams of methamphetamine as a mixture, Welborn's base offense level of 30 (reduced to 27 after a three-point reduction for acceptance of responsibility) would have resulted in a Guidelines imprisonment range of 120 to 150 months. *See* U.S.S.G. §§ 5A (sentencing table); 2D1.1 (Drug Quantity Table).

Although the district court's use of actual methamphetamine in calculating Welborn's sentence increased his Guidelines imprisonment range, it did not increase the applicable minimum or maximum sentences. Section 841(b)(1)(A)(viii) delineates a single offense that can be committed in two ways. It provides in relevant part that an offense involving "50 grams or more of [actual] methamphetamine" *or* "500 grams or more of a mixture or substance containing a

detectable amount of methamphetamine" shall subject the defendant to a minimum term of imprisonment of ten years and a maximum of life. 21 U.S.C. § 841(b)(1)(A)(viii). Because the 725.65 grams of methamphetamine attributed to Welborn exceeded the threshold amounts for both actual methamphetamine and a mixture of methamphetamine under § 841(b)(1)(A)(viii), he was subject to minimum and maximum sentences of ten years and life, respectively, under both ways of satisfying the statute, i.e., without regard to the methamphetamine's purity.

But Welborn was not charged with violating the subsection in both ways. He was charged with and pleaded guilty to violating § 841(b)(1)(A) by conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. From this, Welborn argues that it was improper for the district court to consider the purity of the methamphetamine in scoring his Guidelines range. Or, stated differently, he was sentenced for an offense—conspiracy to distribute more than 50 grams of actual methamphetamine—with which he not charged or convicted.

We reject this argument because, as discussed above, § 841(b)(1)(A)(viii) delineates a single offense. Welborn was sentenced for committing the exact offense with which he was charged and which he pleaded guilty of committing. His conviction was based on his conspiring to distribute 725.65 grams of a mixture and substance containing a detectable amount of methamphetamine. Because of the quantity involved, the purity was irrelevant to establishing his guilt.[3]

---

[3] In a different case, the purity, or the combination of purity and quantity, of the methamphetamine might indeed correspond to two different offenses. For example, if Welborn had been charged with and pleaded guilty to possessing 300 grams of a mixture containing methamphetamine (a violation of 21 U.S.C. § 841(b)(1)(B)(viii), prescribing minimum and maximum sentences for offenses involving "5 grams or more of [actual] methamphetamine . . . or 50 grams or more," but less than 500 grams, "of a mixture or substance containing a detectable amount of methamphetamine"), and when tested the substance turned out to be 90% pure, his sentence would be limited to the statutory maximum for the offense actually charged, and he could not be sentenced under the statute applicable to 50

Further, even if the purity should have been included in the indictment, any error was harmless because the purity of the drugs did not enhance the statutorily prescribed penalties to which Welborn was subject given the large amount of methamphetamine (over 500 grams) attributed to him. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (stating that "[a] constitutionally deficient indictment is subject to harmless-error review."); *Rankin*, 929 F.3d at 404 ("[W]e will reverse a conviction due to the insufficiency of the indictment only if the defendant's substantial rights are affected, meaning he can 'show[] prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'") (quoting *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002)); *see also United States v. Aparicio*, 963 F.3d 470, 473–75 (5th Cir. 2020) (rejecting, on plain error review, argument that indictment alleging possession with intent to distribute 500 grams of methamphetamine mixture provided insufficient notice of charges where defendant was sentenced based on finding that methamphetamine was "ice"; although base offense level and advisory Guidelines range increased, because defendant's statutory penalty was not affected, fact that methamphetamine was "ice" was not an element of the offense required to be alleged in the indictment).

For the reasons set forth above, we reject Welborn's challenge to the sufficiency of the indictment.

**B.**

Welborn also argues that the district court incorrectly determined his Guidelines imprisonment range. He contends that it should have calculated a lower range based on a finding

---

grams or more of actual methamphetamine. In that case the amount charged would correspond to two different offenses depending on the purity of the substance.

that his methamphetamine was a mixture rather than actual methamphetamine. We conclude that the district court did not err in calculating Welborn's Guidelines range.

We review the reasonableness of a defendant's sentence under an abuse-of-discretion standard. *United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020). The reasonableness of a sentence has both procedural and substantive components. *Id.* "Procedural reasonableness requires the court to 'properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence.'" *United States v. Bailey*, 931 F.3d 558, 562 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)). Substantive reasonableness is concerned with whether "a sentence is too long (if a defendant appeals)." *Id.* (quoting *Rayyan*, 885 F.3d at 442).

"In reviewing the district court's calculation of the Guidelines, we . . . review the district court's factual findings for clear error and its legal conclusions *de novo*." *Fleischer*, 971 F.3d at 567 (alteration in original) (quoting *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013)). "A factual finding is clearly erroneous when we—after considering all of the evidence—are 'left with the definite and firm conviction that a mistake has been committed' by the district court." *United States v. Sands*, 4 F.4th 417, 420 (6th Cir. 2021) (quoting *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)).

The district court calculated Welborn's Guidelines range based on a finding that his methamphetamine was actual methamphetamine rather than a mixture. That finding was based on the results of two DEA laboratory reports. Although Welborn suggests that the district court was constrained by the indictment and guilty plea's recitation that his offense involved a

methamphetamine mixture, we have held that in sentencing, "[t]he district court may rely on any competent evidence in the record; however, the district court's findings must have some minimum indicium of reliability beyond mere allegation." *United States v. Treadway*, 328 F.3d 878, 884–85 (6th Cir. 2003) (quoting *United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002)). Welborn did not dispute the accuracy of the laboratory tests below and does not do so on appeal. The district court therefore did not err in relying on the laboratory reports in calculating Welborn's Guidelines imprisonment range.

Further, we have rejected the argument that a plea agreement constrains the district court's sentencing decision in circumstances very similar to Welborn's. In *United States v. Johnson*, the defendant pleaded guilty to possession with intent to distribute 50 grams or more of "a mixture and substance containing methamphetamine," which produced a Guidelines imprisonment range of 60 to 71 months. 812 F. App'x 329, 332–33 (6th Cir. 2020). However, when laboratory results showed that the mixture of methamphetamine attributed to the defendant contained 67 grams or more of actual methamphetamine, his Guidelines range was revised to 108 to 135 months of imprisonment. *Id.* at 332. In rejecting the defendant's argument that his plea agreement precluded the use of a higher base offense level, we emphasized that the plea agreement "served only to limit the statutory penalties" to which he was subject; it did not prevent the district court from calculating a higher Guidelines imprisonment range. *See id.* at 333 (citing *United States v. Molina*, 469 F.3d 408, 414 (5th Cir. 2006)).

Indeed, we have recognized that sentencing judges, who have "well-established authority to rely on [their] own factfinding when deciding a defendant's guidelines range and sentence," *United States v. Brazil*, No. 20-1120, 2020 WL 8511716, at *3 (6th Cir. July 28, 2020) (order), may properly find facts that increase a defendant's Guidelines imprisonment range. In *United*

*States v. Johnson*, 732 F.3d 577 (6th Cir. 2013), we rejected the argument that a sentencing court violates the Sixth Amendment by making a drug quantity determination by a preponderance of the evidence. *Id.* at 583–84. We recognized that in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court made clear that facts that increase a defendant's statutory maximum or minimum sentence are elements of a crime that must be proved to the jury, but concluded that *Apprendi* and *Alleyne* do not apply to judicial fact-finding that "resulted in a Guidelines range above the minimum but below the maximum sentence" because those facts "do not increase the prescribed statutory penalties." *Id.* at 584.

Here, although the purity of Welborn's drugs increased his Guidelines imprisonment range, it did not change his minimum or maximum statutory penalties of ten years and life, respectively. *See* 21 U.S.C. § 841(b)(1)(A)(viii). The district court therefore committed no error by looking beyond the indictment and plea agreement in determining Welborn's sentence.

That Welborn's plea agreement contained a factual admission that he conspired to distribute 500 grams or more of a mixture containing methamphetamine does not change this result. By so stipulating, Welborn "admitted nothing about the purity of that mixture." *Johnson*, 812 F. App'x at 333. As we have explained, the Drug Quantity Table in the Sentencing Guidelines categorizes methamphetamine "in terms of purity into 'methamphetamine,' 'methamphetamine (actual)' and 'ice.'" *Id.* at 331–32. "Methamphetamine" refers to "the entire weight of any mixture or substance containing a detectable amount of" methamphetamine, that is, a methamphetamine mixture. U.S.S.G. § 2D1.1(c) (note (A)); *see also Johnson*, 812 F. App'x at 332. "Ice," which is not at issue in this appeal, is defined as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c) (note (C)). Finally, "methamphetamine (actual)" refers to "the weight of the controlled substance, itself, contained in

the mixture or substance." U.S.S.G. § 2D1.1(c) (note (B)). The Drug Quantity Table uses "a 10:1 weight ratio between methamphetamine mixtures and actual methamphetamine or ice." *Johnson*, 812 F. App'x at 332. Thus, "a mixture weighing 10 grams containing [methamphetamine] at 50% purity contains 5 grams of [methamphetamine] (actual)." U.S.S.G. § 2D1.1(c) (note (B)). Here, the indictment and plea agreement indicated only that Welborn conspired to distribute 500 grams or more of a mixture containing methamphetamine; neither said anything about "the weight of the [methamphetamine], itself, contained in the mixture or substance." U.S.S.G. § 2D1.1(c) (note (B)).

Accordingly, the government was not precluded from presenting additional evidence regarding the purity of that mixture. Indeed, in his plea agreement, Welborn specifically agreed that the facts to which he stipulated did "not necessarily constitute all of the facts in the case," R.72, PID 123; that "[o]ther facts may be relevant to sentencing," *id.*; and that both he and the government had "the right to present additional facts to the Court to ensure a fair and appropriate sentence," *id.* And, Welborn acknowledged that his sentence would be "based upon the entire scope of [his] criminal conduct." R.72, PID 125. In short, Welborn fully agreed and was on notice of the possibility that his sentence could be increased based on facts not stipulated to in the plea agreement.

Further, the district court followed the Guidelines' explicit instructions. Note (B) to the Drug Table, U.S.S.G. § 2D1.1, instructs sentencing courts to "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), *whichever is greater*." U.S.S.G. § 2D1.1(c) (note (B)) (emphasis added). Had the district court considered the 725.65 grams of methamphetamine attributed to Welborn as a mixture, Welborn's base offense level would have been 30. *See* U.S.S.G.

§ 2D1.1(c)(5) (prescribing base offense level of 30 for "[a]t least 500 G but less than 1.5 KG of Methamphetamine"). The same would be true if the district court only held Welborn responsible for 500 grams of methamphetamine mixture. *See id.* By contrast, the 725.65 grams of actual methamphetamine the district court ultimately attributed to Welborn produces a base offense level of 34. *See* U.S.S.G. § 2D1.1(c)(3) (prescribing base offense level of 34 for "at least 500 G but less than 1.5 KG of Methamphetamine (actual)"). Because the offense level determined by the weight of the actual methamphetamine attributed to Welborn produced a higher base offense level than the mixture, the district court correctly applied a base offense level of 34, which resulted in a correspondingly higher Guidelines imprisonment range. *See United States v. Deaton*, 8 F. App'x 549, 551 (6th Cir. 2001) (order); *see also Johnson*, 812 F. App'x at 332.

For these reasons, we conclude that the district court did not err in calculating Welborn's Guidelines imprisonment range.

## C.

Finally, Welborn argues that this court "should categorically reject, on policy grounds, the 10:1 [ratio] between quantities of Methamphetamine Actual and Methamphetamine Mixture in the Guidelines." Appellant Br. at 20. He contends that the Guidelines' use of the 10:1 weight ratio lacks empirical basis and rests on an outdated notion that purity is an accurate indicator of a defendant's role in the drug-trafficking conspiracy.

Because Welborn did not raise this argument below, we review his challenge for plain error. *See United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012). We will find plain error if the district court "made (1) an error, (2) that was obvious or clear, (3) that affected defendant's substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial

proceedings." *United States v. Simmons*, 587 F.3d 348, 360 (6th Cir. 2009) (citing *United States v. Houston*, 529 F.3d 743, 750 (6th Cir. 2008); Fed. R. Crim. P. 52(b)).

Although the Sentencing Guidelines are "the starting point and the initial benchmark" for calculating a defendant's sentence, *Gall v. United States*, 552 U.S. 38, 49 (2007), "district judges [may] vary from the Guidelines based on policy disagreements," *United States v. Camacho-Arellano*, 614 F.3d 244, 250 (6th Cir. 2010) (citing *Kimbrough v. United States*, 552 U.S. 85 (2007); *Spears v. United States*, 555 U.S. 261 (2009)). And several district courts have rejected the 10:1 weight ratio between methamphetamine mixture and actual methamphetamine due to policy disagreements with the Guidelines. *See Johnson*, 812 F. App'x at 334. But "[t]he question for this court is not whether we might find any of those reasons persuasive." *Id.* Rather, our inquiry is limited to whether the district court plainly erred in declining to declare a categorical policy disagreement with § 2D1.1's distinction between actual and mixed methamphetamine. *See id.*

We conclude that the district court did not plainly err in following § 2D1.1 of the Guidelines. "[T]he fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011). Moreover, "[w]e have never required a district court to independently assess the empirical support for a specific Guideline, 'to delve into the history' of the Guideline, or otherwise satisfy itself that the Guideline is proper." *United States v. Massey*, 663 F.3d 852, 862 (6th Cir. 2011) (quoting *Brooks*, 628 F.3d at 800). Accordingly, "a district court cannot be said to have" plainly erred "merely because it *followed*" a Guideline, as the district court did here. *United States v. Lynde*, 926 F.3d 275, 280 (6th Cir. 2019).

## III.

For the reasons set forth above, we **AFFIRM** Welborn's sentence.

**CLAY, Circuit Judge, concurring.** On appeal, Defendant Kendale Welborn challenges whether the indictment sufficiently alleged the criminal conduct for which he was sentenced, and whether the district court properly calculated his Sentencing Guidelines; and he asks this Court to declare a disagreement on policy grounds to being sentenced more severely based on pure methamphetamine than equal weights of methamphetamine mixture. For the reasons stated in the majority opinion, Welborn's sentence should be affirmed.

Interestingly, Welborn has not challenged the validity of his plea agreement. A plea agreement is only valid when made "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "[T]he defendant is required to understand the nature of the charges against him and the consequences of pleading guilty, including the possible punishments and loss of other rights." *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013). Courts "consider[] all of the relevant circumstances surrounding" the plea or waiver, including the "possibility of a heavier sentence . . . ." *Brady*, 397 U.S. at 749.

In its rush to force Welborn into a guilty plea, the government permitted Welborn to plead guilty to conspiring to distribute a methamphetamine mixture. Doing so left him with the impression that he would receive a lighter Guidelines range than if he pleaded guilty to or was convicted of conspiring to distribute pure methamphetamine. It is hard to conceive how Welborn understood the "likely consequences" of his guilty plea when the government withheld information that misled him into believing he would receive a shorter sentence. *Id.* at 748.

This case began with a police search of Welborn during a traffic stop on March 10, 2019, during which approximately 70 grams of methamphetamine was recovered from his person.

The following week investigators discovered approximately 650 grams of additional methamphetamine in a hotel room in which Welborn was residing. The government attributed a total of 725.65 grams of methamphetamine to Welborn. In November 2019, the government sent the two specimens of methamphetamine to the U.S. Department of Justice's Drug Enforcement Administration ("DEA") for purity testing. By December 12, 2019, the DEA had analyzed and approved the testing of both specimens and determined they were both 100% pure methamphetamine.

Despite being aware of the drugs' purity, on February 19, 2020, the government indicted Welborn for "conspir[ing], confederat[ing], and agree[ing] to knowingly and intentionally distribute 500 grams or more of a *mixture* and substance containing a detectable amount of methamphetamine . . . in violation of [21 U.S.C. §§] 84l(a)(l), 841(b)(l)(A), and 846." (Indictment, R. 1, Page ID #1 (emphasis added).) Welborn pleaded guilty to this offense and "admit[ted] that, as charged in the Indictment, he knowingly conspired with others to distribute in excess of 500 grams of a *mixture* and substance containing methamphetamine." (Plea Agreement, R. 72, Page ID #124 (emphasis added).) By the time the district court accepted the plea agreement on August 25, 2020, the government had known the methamphetamine was pure for more than eight months.

Only after it was too late for Welborn to challenge any of the elements of his conviction did the government "surprise" Welborn by mentioning for the first time that the methamphetamine was pure. (Sent'g Tr., R. 238, Page ID #1522.) Instead of calculating Welborn's Sentencing Guidelines range based on 725.65 grams of a methamphetamine mixture, as Welborn thought the court would do when he pleaded guilty, the government requested Welborn be sentenced for the same weight of actual methamphetamine, which imputes a significantly longer Sentencing Guidelines range. In other words, the government requested a sentence not based on the facts set

forth in the indictment and agreed to in the plea agreement, but instead based on the information it withheld during plea negotiations.

The government's conduct in this case was by no means unusual. As the district court noted, defendants who plead guilty to conspiring to distribute a methamphetamine mixture and who are then "surprised" at sentencing to learn that the methamphetamine was pure has created "a recurring problem" for district courts. (Sent'g Tr., R. 238, Page ID #1523.) Whether this bait-and-switch tactic can be used to induce defendants into enforceable plea agreements is certainly questionable. At the very least, the government's conduct in this case created an appearance of unfairness, which, of course, should be strongly discouraged. However, because Welborn has not challenged the validity of his plea on appeal (or before the district court), the Court properly declines to address the merits of this issue.

In sum, I agree with the majority that, under the existing state of this circuit's law, the indictment was sufficient and the sentencing court did not err in considering the purity of the methamphetamine. Accordingly, the judgment of the district court should be affirmed. But affirming the district court should not be construed as condoning the government's conduct. To the contrary, the government's conduct in this case should be condemned.