NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0113n.06

No. 23-6078

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 27, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JACQUEZ REVERAND, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: BATCHELDER, BUSH, and BLOOMEKATZ, Circuit Judges.

**BUSH, Circuit Judge.** A jury convicted Defendant-Appellant Jacquez Reverand of three felony drug and firearm offenses arising out of his membership in a drug conspiracy in Memphis, Tennessee. On appeal, Reverand challenges the sufficiency of the government's evidence on one count of conviction and the procedural reasonableness of the sentence imposed for the other two counts. We reject his arguments and **AFFIRM**.

**I.**

**A.**

In 2018, law enforcement began investigating the Memphis Mob, a gang named for the city where it engaged in controlled-substance distribution. Eventually, the investigation led to a residence on North Claybrook Street. This address was a center of the gang's drug activities. There, both inside and outside, the gang stored large quantities of drugs, and it conducted dozens of transactions out of the home each day. Unsurprisingly, the residence was heavily guarded.

Members of the gang routinely carried and brandished firearms on the property, and it had an extensive video surveillance system.

Enter Jacquez Reverand. He was a member of the gang who spent significant time at the North Claybrook residence. Surveillance footage introduced at trial showed Reverand routinely carrying firearms and performing hand-to-hand drug transactions on the property and at other locations. Although he was not a senior member of the gang, Reverand was intimately involved with its activities, and at least one witness described Reverand's role in the gang as "[t]aking the shots, shooting." Trial Tr., R. 931, PageID 5475.

In March 2019, law enforcement responded to a barrage of gunfire at the North Claybrook address. Testimony and video evidence presented at Reverand's trial filled in the events of that day. Reverand was present at the residence when a man named Keenan Fields, a regular customer of the gang's drug operation, arrived to buy heroin. Fields also planned to sell stolen clothing outside the home, which he did regularly. At some point, Fields's cousin, Daija Jones, arrived in a car to pick up Fields. Jones also brought along her child, her boyfriend, and an associate.

Upon arrival, the boyfriend purportedly asked to urinate around the side of the residence. When he returned to the front of the house, gang members piled out of the residence. They accused the boyfriend of bending down beside the house, picking something up, and stuffing it in his sock. An argument ensued. Fields, Jones, and her boyfriend then ran back to their car and attempted to drive away.

At that point, Gregory Martin, a gang member, began shooting at the vehicle. Reverand himself then emerged from the residence and began shooting as well. Fields suffered a gunshot to the head, and the car eventually crashed. The police soon arrived but were unable to detain

Reverand. After the shooting, the gang relocated their operation to a new location, where Reverand continued to distribute cocaine.

**B.**

The United States indicted Reverand on eight controlled-substance and firearm offenses related to his participation in the gang and the March 2019 shooting. After an eleven-day trial, the jury returned a mixed verdict. Though it acquitted him on several counts, the jury found Reverand guilty on Count 2 (conspiracy to distribute cocaine), Count 5 (conspiracy to use or carry a firearm during and in relation to the conspiracy to distribute cocaine), and Count 8 (aiding and abetting the discharge of a firearm during and in relation to the conspiracy to distribute cocaine). As to Count 2, the jury was asked to identify the amount of cocaine "that was attributable to [Reverand] as the result of his own conduct and the conduct of other co-conspirators reasonably foreseeable to [Reverand]." Verdict Form, R. 885, PageID 4399. The jury attributed "[l]ess than 500 grams" to Reverand. *Id.*

Sentencing brought questions over the calculation of Reverand's Sentencing Guidelines range. The parties disputed the base offense level for Counts 2 and 5, which were grouped together under U.S.S.G. § 3D1.2(c). The Presentence Report recommended a base offense level of 27 based on a cross-reference to U.S.S.G. § 2A2.1(a)(2), which applies when the offenses involve an attempted murder or an assault with intent to commit murder. The Report found that provision applicable because, in shooting at the car outside the North Claybrook residence in March 2019, Reverand exhibited an intent to kill the passengers. This finding, combined with the applicable specific offense characteristics and adjustments, supported the Report's recommendation of a total offense level of 31 and a Guidelines range of 121–151 months' imprisonment on Counts 2 and 5.

Reverand objected to that calculation. He argued § 2A2.1(a)(2) could not apply because he lacked the specific intent to kill the car's passengers. Instead, Reverand maintained that the base offense level should be determined by the drug weight he was responsible for under U.S.S.G. § 2D1.1(a)(5). And instead of being responsible for the drugs handled by the entire conspiracy, Reverand argued he has culpability for only 50 to 100 grams of cocaine, which would lead to a base offense level of 14. *See* U.S.S.G. § 2D1.1(c)(13).

At sentencing, the district court chose to calculate Reverand's base offense level based on the drug weight he was responsible for. And rather than follow Reverand's recommendation, the district court calculated the punishment for 4,785 grams of cocaine, which resulted in a base offense level of 28. *See* U.S.S.G. § 2D1.1(c)(6). The court based its finding on the amount of cocaine attributable to the conspiracy as a whole. That amount was appropriate, according to the court, because it was a foreseeable consequence of Reverand's joining the conspiracy. Despite its reliance on the drug quantity base offense level, the district court also concluded the evidence was sufficient to apply the cross-reference to the provision on assault with intent to commit murder. The court specifically overruled Reverand's objection to the application of that provision.

Combined with other specific offense characteristics, the district court calculated a total offense level of 30, which, when combined with Reverand's criminal history category, led to a Guidelines range of 97–121 months' imprisonment on Counts 2 and 5. After considering the factors outlined in 18 U.S.C. § 3553(a), the district court sentenced Reverand to a total term of 217 months' imprisonment. That total was the result of a concurrent sentence of 97 months' imprisonment on Counts 2 and 5 and a consecutive sentence of 120 months' imprisonment on Count 8. Reverand timely appealed.

**II.**

Reverand raises two arguments before us. First, he maintains the United States introduced insufficient evidence to establish all elements of Count 8 beyond a reasonable doubt. Second, he claims the district court's sentence on Counts 2 and 5 was procedurally unreasonable because the court incorrectly calculated his Guidelines range. Neither argument is convincing.

**A.**

We begin with Reverand's challenge to the sufficiency of the government's evidence as to Count 8, which charged him with aiding and abetting the discharge of a firearm during and in relation to the conspiracy to distribute cocaine in violation of 18 U.S.C. § 924(c)(1)(A)(iii). We review the sufficiency of the prosecution's proof de novo, *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010), and ask whether any rational trier of fact could have found the elements of the offense charged beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 313–20 (1979). In answering that question, we view the evidence in the light most favorable to the United States and give it the benefit of all reasonable inferences. *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008).

To establish a violation of § 924(c)(1)(A)(iii), the government had to prove that Reverand 1) committed a drug trafficking offense and 2) knowingly discharged a firearm 3) during and in relation to the drug trafficking offense. *See United States v. Lloyd*, 10 F.3d 1197, 1212 (6th Cir. 1993). Reverand challenges the sufficiency of the evidence only as to that final element, claiming the United States failed to establish why he shot at the fleeing car. He maintains the proof at trial showed nothing more than a discharge pursuant to a personal dispute, not a dispute related to the drug conspiracy. We disagree.

Considering the totality of the evidence, a rational juror could conclude that Reverand discharged his firearm to protect the operation of the drug conspiracy. First, he does not dispute that the North Claybrook property was used to store and distribute controlled substances. Second, there was significant evidence that the gang stored narcotics outside the residence, including on the day of the shooting. That proof came from both law-enforcement testimony and multiple recorded phone calls between coconspirators. Third, the United States introduced evidence from which a rational juror could conclude that Reverand and his coconspirators perceived Jones and her associates to be stealing some of the controlled substances stored outside. Fourth, the jury heard testimony indicating that Reverand's role in the gang was that of a "shoot[er]," Trial Tr., R. 931, PageID 5475, which further supported a rational inference that he discharged his firearm in support of the drug conspiracy.

From this evidence, a rational juror could conclude that Reverand and his coconspirators shot because they thought the visitors were trying to steal the group's illegal narcotics or otherwise obstruct the drug conspiracy being run out of the residence.

Reverand's arguments to the contrary are unconvincing. As an initial matter, he suggests the more plausible motivation for his firearm use was a personal dispute between the parties unrelated to the drug trade. But the jury was free to credit the government's view of the dispute. And the prosecution's theory did not require impermissible speculation for a rational juror to convict. As explained above, the United States supported its version of events with affirmative evidence suggesting the argument began over Reverand and his coconspirator's belief that the victims were attempting to steal drugs stored outside the house. So, this is not a case where the prosecution asked the jury to speculate from an absence of proof. *Contra Newman v. Metrish*, 543 F.3d 793, 796–97 (6th Cir. 2008). Rather, the government asked the jury to make a reasonable

inference from circumstantial evidence as to Reverand's motive. That was sufficient to carry the burden imposed by the Due Process Clause.

All told, Reverand has not met his "very heavy burden" to demonstrate that no reasonable juror could have found him guilty beyond a reasonable doubt. *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (citation omitted).

**B.**

Reverand also challenges the procedural reasonableness of the 97-month sentence imposed for Counts 2 and 5. A sentence is procedurally unreasonable when, among other things, the district court improperly calculates a defendant's Guidelines range, and the improper calculation may have impacted the sentence imposed. *United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020). In our examination of the district court's calculation, we review its factual findings for clear error and its interpretation of the Guidelines de novo. *Id.*

A Guidelines range is determined by two components: the defendant's total offense level and criminal history category. Only the former is relevant to this appeal. A total offense level is determined by the defendant's base offense level, plus or minus any special offense characteristics or adjustments. Reverand challenges only the calculation of his base offense level. He agrees with the district court that his base offense level can be determined by the drug quantity he is responsible for under U.S.S.G. § 2D1.1(a)(5). But he takes issue with the quantity of drugs the district court calculated. In his view, the district court erred by holding him responsible for cocaine amounts attributable to other members of the conspiracy, quantities for which he was acquitted by the jury.

We need not decide whether the district court incorrectly calculated the drug quantity Reverand was responsible for under U.S.S.G. § 2D1.1(a)(5). Even if it did, that error would be

harmless because "we are certain that the error did not affect the district court's selection of the sentence imposed." *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008) (citation omitted). We reach this conclusion for two reasons. First, the district court calculated an alternative base offense level that would have resulted in a higher Guidelines range. Second, the court made clear that any sentence less than the one imposed would be inadequate to achieve the purposes of sentencing.

Start with the alternative Guidelines range if the district court did not apply U.S.S.G. § 2D1.1(c)(6). In this case, we need not guess as to what that range would be because the district court already calculated it. At sentencing, the district court specifically concluded that, as the Presentence Report recommended, an alternative base offense level under U.S.S.G. § 2A2.1(a)(2) was appropriate because Reverand's discharge of the firearm outside the North Claybrook residence constituted an assault with the intent to commit murder. That calculation would result in a total offense level of 31 and a Guidelines range of 121–151 months' imprisonment. These alternative calculations are higher than the total offense level and Guidelines range applied under the drug quantity provision. And Reverand's sentence of 97 months' imprisonment fell well below the alternative Guidelines range. That makes Reverand's sentence like the one at issue in *United States v. Freeman*, 640 F.3d 180 (6th Cir. 2011). There, we held that any improper calculation of the Guidelines range was harmless because, even if the defendant was correct, the subsequent Guidelines range would be higher than the range initially calculated and the sentence ultimately imposed. *See id.* at 190–92. The same principle applies here.

Our conclusion is reinforced by the fact that "[n]othing in the record . . . suggests that the district court would have imposed a sentence of less than" 97 months' imprisonment. *Jeross*, 521 F.3d at 576. Quite the opposite. As the district court explained, a sentence below 97 months

"would result in a sentence that, in the Court's opinion, is insufficient to satisfy the [§ 3553(a)] factors. It would neither serve as sufficient punishment nor deter [Reverand] from criminal conduct, and the public would not be sufficiently or adequately protected." Sent'g Tr., R. 1101, PageID 8267–68; *see also id.* at PageID 8269 ("Reverand, is a danger to the public, and he's not likely to be adequately deterred by anything less, in my opinion.").[1]

Reverand's only argument to the contrary is that the application of U.S.S.G. § 2A2.1(a)(2)'s base offense level was factually improper. He maintains that nothing in the record sufficiently established his intent to kill the car's passengers, a prerequisite to the application of § 2A2.1(a)(2). We disagree. As the district court explained, Reverand's "specific intent may be inferred from his firing his gun, aimed at the vehicle filled with people"—repeatedly and over an extended period of time—"such that his bullets could have hit any of them." Sent'g Tr., R. 1101, PageID 8264; *see also United States v. Caston*, 851 F. App'x 557, 563–64 (6th Cir. 2021). Reverand maintains that more is required because his shooting at the car could signal a specific intent only to disable the vehicle, not harm the passengers. But even if more is required, the district court provided it. Examining the evidence, the district court concluded that Reverand continued to fire in the direction of the vehicle after it had crashed. At that point, it was reasonable for the district court to conclude that Reverand's gunfire was specifically intended to harm the persons in the vehicle, not disable the already disabled vehicle.

We recognize that, in the ordinary case, improper application of a base offense level would require vacatur and resentencing. But this is far from the ordinary case. Here, the district court

---

[1] We do not suggest that these statements, standing alone, would necessarily be sufficient to render harmless any improper calculation of a Guidelines range. *See, e.g.*, *United States v. Anderson*, 526 F.3d 319, 330–31 (6th Cir. 2008). Rather, the district court's detailed explanation of the sentence imposed in this case provides further confirmation that any procedural error did not impact Reverand's sentence.

both affirmatively found that an alternative, higher offense level would be appropriate and thoroughly explained that any sentence less than the one imposed would be inappropriate. These unique circumstances leave us with the firm conviction that any potential calculation error did not impact Reverand's sentence as to Counts 2 and 5.

## III.

For these reasons, we affirm the district court's judgment.